CENTRAL PASTO VIEJO, INC., demandante y apelante, *v.* ARTURO APONTE, JR., demandado y apelado.

No. 3367.—*Visto:* Enero 22, 1925. *Resuelto:* Enero 29, 1926.

1. INTERÉS—DERECHOS Y RESPONSABILIDADES EN GENERAL—SOBRE CUENTAS CORRIENTES.—No hay derecho a reclamar y cobrar intereses cuando no ha habido pacto expreso alguno con respecto al pago de los mismos.

2. CUENTAS, ACCIONES FUNDADAS EN—CUENTAS CORRIENTES—EVIDENCIA—EVIDENCIA PRIMARIA Y SECUNDARIA.—Si bien existiendo un cargo en una cuenta corriente—por anticipo entregado en giro que se cobró en un banco con cargo al librador,—el giro sería la mejor evidencia para probar el cargo, perdido el giro, el aviso del banco al girador reclamando el pago unido a la entrada hecha en los libros del librador es prueba meritoria y suficiente para probar dicho cargo, y más aún cuando no se ha impugnado el peso de dicha evidencia.

3. CUENTAS, ACCIONES FUNDADAS EN—CUENTAS CORRIENTES—EVIDENCIA—EVIDENCIA PRIMARIA Y SECUNDARIA.—Cargado en cuenta corriente una cantidad que la originó un cheque expedido, y extraviado éste, los libros llevados en el

curso de las operaciones y de donde resulta el cargo, es prueba suficiente de éste, especialmente cuando no se ha negado la existencia de dicho cargo y las objeciones a su presentación se refieren a otros extremos relacionados con el mismo.

4. APELACIÓN Y ERROR—REVISIÓN—CUESTIONES. DE HECHO, VEREDICTOS Y CONCLUSIONES—APRECIACIÓN DE LAS PRUEBAS—PRUEBA CONTRADICTORIA.—Cuando la propia conducta y actos de un apelante no convencen al tribunal de apelación que la prueba en conjunto no sostiene la conclusión a que llegó la corte inferior al dirimir el conflicto existente en la misma, procede confirmar la sentencia apelada.

5. COSTAS—PARTE QUE OBTIENE SENTENCIA A SU FAVOR—SENTENCIA FAVORABLE EN PARTE.—Cuando una parte no obtiene sentencia favorable a todas sus peticiones, la corte inferior no comete abuso de discreción al dictar dichas sentencias sin especial condenación de costas.

SENTENCIA de *Pablo Berga, J.* (Humacao), declarando con lugar la demanda solamente en cuanto a su primera causa de acción, y sin lugar la reconvención del demandado, sin costas. *Revocada en cuanto a ciertos pronunciamientos y confirmada en cuanto a los demás.*

*Henry G. Molina* y *González Fagundo & González, Jr.,* abogados de la apelante; *Arturo Aponte, Jr.,* y *Carlos Travecier* y *Fernando Gallardo,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

La Central Pasto Viejo, Inc., que es una corporación que se dedica a la fabricación de azúcar, instituyó este pleito para recobrar del demandado Arturo Aponte las dos cantidades siguientes: una por $8,945.54 más intereses a razón del 9 por ciento anual como saldo de un contrato sobre refacción para la siembra y cultivo de cañas; y la otra, montante a $4,400, con intereses al 8 por ciento anual, cantidad que procede, según se alega, del precio de la finca "Fuentes" que la demandante vendió al demandado.

La corte inferior dictó sentencia y condenó al demandado a pagar la cantidad de $6,956 de la cuenta corriente, desechando dos cargos de $40 y $430.14, respectivamente, por no resultar comprobados, y el cargo de intereses por no aparecer convenidos expresamente; y desestimó la partida de $4,400, llamada "cuenta especial," aceptando la teoría del demandado en este punto, y por último declaró sin lugar

cierta reconvención que el demandado estableció contra la demandante.

Las cuestiones que en este caso levanta la demandante-apelante en dos extensos alegatos, se refieren a cada una de las partidas que fueron rechazadas por la corte inferior, y se apuntan, a saber:

"1. La corte erró al resolver que la prueba no era bastante para justificar el cargo por la demandante en la cuenta de refacción del demandado de $40 en agosto 6, 1920.

"2. La corte erró al resolver que la prueba no era bastante para justificar el cargo por la demandante en la cuenta de refacción del demandado de $430.40 ($430.14) en junio 23, 1920.

"3. La corte erró al resolver que el demandado no era en deber a la demandante la suma de $4,400 e intereses, ni cantidad alguna como precio de la venta de ciertas cuerdas de la finca 'Fuentes.'

"4. La corte erró al resolver que el demandado no estaba obligado a pagar a la demandante intereses algunos sobre los anticipos refaccionarios.

"5. La corte erró al no imponer al demandado el pago de las costas, incluyendo los honorarios de los abogados de la demandante."

I. Estudiaremos en este número los errores 1, 2 y **4**, pues la corte inferior resume la prueba y sus razonamientos en relación con ellos, del modo siguiente:

"Esta causa de acción se funda en una cuenta corriente que la demandante abrió al demandado, por convenio de ambas partes, allá el 25 de Enero de 1919, por cantidades de dinero y efectos suministrados, que implica el contrato de devolverlos y pagarlos, para la siembra y cultivo de caña de azúcar, cuyo hecho se ha admitido por el demandado, aun cuando alega que dicha cuenta jamás le ha sido liquidada o saldada, y que nunca ha existido conformidad en cuanto a la misma. Las cuentas corrientes se entienden siempre liquidadas, pues su liquidación depende de una simple operación aritmética. Blanco López y Ca. v. Torres, 25 D.P.R. 700; Jiménez v. Alfonso, 29 D.P.R. 322; Armstrong & Co. v. Irizarry, 29 D.P.R. 606. La demandante pasó al demandado estados de esta cuenta. A la demanda se acompaña, Exhibit A, un estado de cuenta hasta Julio 13, 1921; y últimamente, después de presentada la demanda, y a **requerimiento** del demandado la demandante le entregó estados generales de la cuenta, fechados Abril 7, 1919; Junio 14, 1919; Abril 28,

1920; Junio 30, 1920 y Diciembre 31, 1920. Rafael Baragaño entregó también personalmente al demandado en Julio de 1921, un estado de cuenta y en 7 de Septiembre de 1921, se le remitió asimismo otro estado, por correo certificado, que el demandado recibió. No puede decirse, por el resultado de la prueba que el demandado prestara su conformidad y aprobara los estados de cuentas pasádoles, excepto el que se le remitiera a su requerimiento, con carta de Abril 22, 1920, que arrojaba un saldo a favor de la demandante de $5,083.13. Y decimos que este estado de cuenta fué aceptado porque finalmente, en Mayo 26, 1920, el demandado hizo un abono de $5,000. Sin embargo, con respecto a los cargos sobre intereses, el demandado nunca ha estado conforme. La cuenta arroja un saldo a favor de la demandante de $8,945.54, incluyendo intereses.

"En el acto de la vista, la demandante solicitó eliminar de la cuenta el cargo de intereses sobre intereses (intereses compuestos) ascendente a $6.28 y dejó a la consideración del tribunal la cuestión del resto de los intereses (intereses simples) por entender que la central tiene derecho al cobro de los mismos, por ser costumbre en las cuentas por refacción agrícola. En la demanda no consta alegación alguna con respecto a intereses y la prueba tampoco ha demostrado que existiera entre las partes convenio alguno en cuanto al pago de los mismos. Las cuentas corrientes no producen interés, a falta de convenio entre las partes, sino desde la fecha en que se reclama su saldo judicialmente. Además, 'no se deberán intereses sino cuando expresamente se hubiesen pactado.' Artículo 1657, Código Civil. Por tanto, esta corte estima que debe eliminar lo relativo a intereses, o sea un total de $1,178.26, quedando así reducida la cuenta a $7,767.28.

"De esta misma causa de acción la demandante solicitó en corte abierta, durante el juicio, que se rebajase todo lo relativo a almacenaje y seguro de incendio, cuyas partidas ascienden a la suma de $107.16, quedando de este modo reducida la cuenta a $7,660.12.

"En el acto del juicio la demandante también renunció al cargo 'Factura Central,' de Junio 3, 1920, por la suma de $20.00, que aparece en la cuenta de Junio 30, 1920, y a las partidas cargadas en Agosto 31, 1920, por $112.35 y Enero 15, 1921, por $100.21, por corresponder éstas a otra cuenta. También debe ser abonado al demandado la suma de $1.00 que aparece cargada de más en la partida de Junio 5, 1920, según semanal 47 por $1,133.34, por cuanto los giros expedidos por $888.18 y $244.16 en pago del mismo, sólo montan a $1,132.34. De modo que deduciendo estas cantidades, que suman un total de $233.46, queda reducida la cuenta a $7,246.66.

"La prueba no ha sido bastante, a nuestro juicio, para justificar los siguientes cargos: $40.00, de la partida por $161.00, Agosto 6, 1920, según semanal No. 6, por cuanto la carta-orden o giro de Agosto 7, 1920, es sólo por la suma de $121.00; y $430.40 de la partida por $844.92, Junio 23, 1920, según semanal No. 50, por cuanto la carta orden o giro de Junio 12, 1920, es sólo por la suma de $414.78. Estas cantidades suman un total de $470.40, que también debe ser deducido de la suma de $7,426.66, quedando un saldo a favor de la demandante y en contra del demandado de $6,956.26 que no ha sido satisfecho y que ha quedado justificado por el resultado de toda la prueba practicada."

Un análisis de la evidencia nos lleva en igual sentido a las mismas conclusiones del juez inferior, exceptuando, sin embargo, los cargos de $40 y $430.14. Empezaremos por el cargo sobre intereses.

[1] (a) Las relaciones de íntima amistad que sostenía el demandado con José D. Riera, director y administrador de la Central, bien fuese debido principalmente a su carácter de abogado de la corporación, parece ser un dato importante para conocer el motivo de llevarse a efecto un contrato de refacción sin mediar, como dice la misma apelante, "carta o constancia alguna referente a lo convenido con el demandado cuando se le abrió la cuenta de refacción." Generalmente se celebraban haciéndolos constar en las fórmulas impresas con espacios en blanco que tenía la central para todos sus colonos. No existe, pues, un pacto expreso sobre estipulación de intereses. La apelante sostiene, sin embargo, que el demandado admitió tácitamente el pago de intereses al remitirle las numerosas cartas que se enviaron con liquidaciones en las que figuraban el cargo de intereses, y además, expresamente, por sus admisiones en las conferencias que tuvo con el testigo Walker, vicepresidente de la corporación, requiriéndole el pago de la cuenta. El demandado negó tales admisiones y negó asimismo haber recibido en general dichas cartas y liquidaciones. Unicamente admitió haber recibido tres liquidaciones que datan de abril 22, 1919, julio 29, 1921, y septiembre 7, 1921, y declaró que

por su situación especial con la administración de la central, no se le consideraba un colono común y corriente y que lejos de pasarle borderós y cuentas para cobrarle, la demandante daba lugar a que el propio demandado fuera el que pidiera la nota de lo adeudado para poder pagar. En conexión con este extremo la prueba documental establece que el demandado escribió a la demandante en abril 19, 1919, una carta, que en parte dice: ''A ese fin me permito rogarles den las oportunas órdenes respecto al particular y al mismo tiempo comunicarme el importe de lo que actualmente adeudo a la central a fin de enviarle un cheque por su montante.'' La demandante contesta con fecha 22 de abril y remite un extracto de la cuenta corriente en la que se hacía el cargo de intereses a razón del 9 por ciento anual. Aparece entonces la carta de abril 26, 1919, del demandado, en donde impugna la partida de intereses. La apelante analiza en sus detalles esta carta, pues alega que sin ella quedaba probado la aceptación de intereses. Quizá la apelante tenga razón al señalar cierta inconsistencia del demandado al referirse a otros reparos de su cuenta, pero por las demás circunstancias concurrentes no es aventurado decir que el demandado pudo tener una impresión errónea al señalar dichos reparos. Y respecto a los extractos de cuenta de julio 29, 1921, entregado por Baragaño personalmente al demandado, y el de septiembre 7, 1921, que le fué enviado bajo pliego certificado, ya la cuenta era objeto de discusión y se produjeron para ser examinados por el demandado. Y por último, en septiembre 12, 1921, el demandado pedía un detalle de la cuenta, y sin que recibiera contestación, pocos días después fué presentada la demanda.

La remisión de las varias liquidaciones y diferentes cartas a que alude la apelante, se intenta sostener principalmente con el testimonio del tenedor de libros de la central, Manuel Comas. Su declaración es muy extensa y la corte inferior, no obstante, no dió crédito a sus manifestaciones en ese punto. El declara que personalmente depositaba las

cartas de colonos en el correo y escribía en maquinilla las mismas. Otro testigo, Rafael Martínez Domínguez, uno de los directores de la central, dijo que había un mensajero que también llevaba cartas al correo y finalmente Comas admitió que existía otro oficinista que también escribía las cartas en maquinilla. La declaración del testigo Comas en otros extremos, como veremos al examinar el tercero de los errores apuntados, se hace tan sospechosa, que no es posible descansar en su testimonio. Asimismo no parece que puede ayudarnos lo que ocurriera en las dos conferencias que tuvo Walker y Baragaño con el demandado, interviniendo otros testigos de una y otra parte. La corte inferior resolvió el conflicto de evidencia sin deducir que el demandado hiciera la admisión de intereses y el récord nada dice claramente que no sostenga la acción de la corte. La apelante insiste fuertemente que el testigo Rafael Baragaño era un amigo íntimo del demandado y que éste no podía dudar de sus manifestaciones. Sin embargo, una vez que se examina su declaración se puede ver que su actitud es más bien hostil al demandado y que además encontramos un particular en la misma en que halagado el testigo bajo las circunstancias en que parecía encontrarse con ciertas promesas que podían influenciar su ánimo, no era extraño que la corte no diera crédito del todo a este testigo. El era entonces administrador de la central, parece que estaba próximo a cesar en su cargo, y en el período de repreguntas se refiere el siguiente incidente:

"Sr. Baragaño, cuando usted firmó este documento al Sr. Molina en la oficina del Sr. Bertrán, usted era administrador de la Central Pasto Viejo todavía?—Sí, señor.

"¿Recuerda el Sr. Baragaño, si el Sr. Walker en la casa del Sr. Fuertes, ofreció al Sr. Baragaño, defenderle como candidato a Administrador de la Central Pasto Viejo y de la Yabucoa Sugar Company en combinación?—Esa es una cuestión personal que no tiene que ver nada con esto.

"¿Pero se habló de eso?—Yo no quisiera que se refiriera á nada de eso, porque es una cuestión personal.

"¿Pero el Sr. Walker dijo eso o nó, Sr. Baragaño?—Creo que sí."

La apelante contiende además como cuestión legal, que es de conocimiento judicial que casi todas las corporaciones azucareras tienen que levantar fondos en los bancos para cubrir la refacción, sosteniéndose también que ningún oficial tiene derecho a tomar el dinero de los accionistas y entregarlo a cualquier persona, bien sea su abogado, sin cobrarle intereses. Lo primero es una cuestión de hecho y hay que probarlo. Y lo segundo puede depender del objeto ó negocio a que se dedique la corporación. En corporaciones bancarias su negocio consiste solamente en el interés que se obtiene sobre el dinero prestado. En las azucareras, además de cobrar intereses sobre la refacción, si es que se pactan, se adquiere siempre el beneficio industrial, que á veces puede ser de mucho margen, según la condición de las cañas. Tal vez la demandante se conformara con el beneficio industrial, bien sea por las relaciones especiales que unía al demandado con los primitivos administradores Riera y Baragaño de la central, o bien fuera por la condición de sus cañas, pues el récord descubre que el demandado tenía un cuarto más sobre el precio que tenían todos los demás colonos de la central y que se le abonaba indirectamente "por arrimo de cañas," para no suscitar el celo de los numerosos colonos exigiendo igual precio a sus cañas o reclamando el mismo privilegio que pudiera tener cualquier otro colono por razón de su contrato. No nos corresponde hacer la crítica o investigar el derecho que podían tener los oficiales de la central para hacer tales concesiones, pues son materias de la competencia exclusiva de los directores y de cuidado y atención, en último término, por los accionistas, pero no es cosa que pueda sorprender que dichos oficiales hayan sido igualmente liberales al dispensar del pago de intereses al demandado. La corte inferior no cometió error, por tanto, al desestimar tales intereses.

[2] (*b*) El cargo de $40 es un anticipo que aparece englobado en la suma total de $161 anotada en el libro semanal de entregas a colonos. La totalidad se entregó al demandado en dos partidas: una por $121, recibida por Elpidio Ramos por orden del demandado, y la restante de $40, cantidad en discusión, en un giro que el demandado cobró en el Banco Comercial de Puerto Rico con cargo a la demandante y reembolsado por esta parte a dicho banco.

La mejor evidencia, sin duda, para probar el cargo hubiera sido el giro mismo, pero se alegó que se había extraviado el documento, después de recibido por la demandante, por lo cual fué presentada prueba secundaria. Esta no consistió únicamente en la prueba oral del tenedor de libros, Manuel Comas, que dijo que lo vió y estuvo en sus manos. La corte inferior pudo no tener en cuenta por sí sola esa manifestación, pero no así era razonable desechar el valor probatorio del aviso del Banco Comercial a la demandante reclamando el pago del giro, que dice así:

"Banco Comercial de Puerto Rico.—Depositarios del Gobierno.— Sucursal de Humacao.—Humacao, P. R., 2 de Agosto de 1920.—Sr. Central Pasto Viejo, Inc., Pasto Viejo.—Muy Sr. n/: Hemos recibido a su cargo los giros relacionados al pie, cuyo importe le rogamos nos remese oportunamente.—De Uds. attos. S. S., (fdo.) F. Rodríguez, Sub-Gerente.

| No. | Girador | Cantidad. |
|---|---|---|
| Julio 31 | Arturo Aponte, Jr. | $ 40. 00 |
| " 31 | Miguel A. Bustelo | 675. 00 |

$715. 00"

Este es un principio de prueba escrito y si lo relacionamos con la entrada que se hizo en el libro semanal de la central, la prueba era meritoria y suficiente, pues sin nada que impugne el peso de esa evidencia su fuerza es tan primaria como si se tratara del giro mismo. La corte erró no apreciando que el cargo de $40 quedaba justificado.

[3] Lo mismo podrá decirse del cargo de $430.14. Aparece unido a otra partida de $414.78 en el libro semanal, ha-

ciendo un total las dos cantidades de $844.92. La segunda representaba un giro que libró el demandado al Banco Comercial con cargo a la demandante, y la primera de $430.14, cantidad en controversia, la originaba un cheque que la demandante expidió al demandado. Se extravió el cheque y se practicó prueba secundaria. Se presentó el libro semanal No. 50, del 12 al 18 de junio, 1920, de donde resulta el cargo de $430.14 por un cheque expedido con el No. 903 a favor del demandado. Esta prueba es cierto que fué admitida con oposición del demandado, pero no hay que perder de vista que la demandante no estaba en aptitud de ofrecer otra prueba mejor que la admitida. Se trata de un libro diario auxiliar que se lleva en el curso de las operaciones y el demandado además no negó en absoluto la existencia del cargo sino que su oposición se concretó más bien a combatir tenazmente la partida de intereses, y las de almacenaje y seguro. Tampoco insiste el demandado en su alegato en discutir el mérito de las cantidades de $40 y $430.14, limitándose a sostener que establecida una doble apelación, la segunda que se refiere a dichas cantidades, no es válida. La sentencia se dictó el 2 de diciembre de 1922. La apelante radicó el primer escrito de apelación en diciembre 6, 1922, y especificó en él los particulares de que apelaba. Comprendía los intereses, una partida de $4,400 de una cuenta especial y costas. Un segundo escrito de apelación fué archivado con carácter suplementario en diciembre 30, 1922, y se refería a las cantidades de $40 y $430.14. El segundo escrito fué presentado dentro del término que señala la ley. El caso de *Veve* v. *Fajardo Sugar Growers Association,* 17 D.P.R. 1036, se funda en motivos distintos y los casos de California que cita el apelado tampoco son aplicables, pues convenimos con la apelante que se originaron debido al requisito de fianza que no se exige en Puerto Rico para apelar.

Las cantidades de $40 y $430.14 deben ser, por tanto, sumadas al saldo de $6,956.26 que aceptó la corte inferior en

su sentencia, pues si bien en el curso de la prueba el demandado trató de impugnar cierta partida relativa a una cantidad de azúcar por habérsele abonado un precio inferior al que alegó ser convenido, dicha corte resolvió el conflicto de evidencia en su contra y sostuvo el abono en la forma en que aparece acreditado.

[4] Otra partida que fué desestimada por la corte inferior asciende a la suma de $4,400, asentada en los libros de la central bajo el nombre de "cuenta especial" y no en la cuenta corriente, alegando el apelante tal distinción por su carácter distinto a las partidas de refacción. La corte inferior hace un cuidadoso estudio de la prueba y resume sus conclusiones en ese punto, diciendo:

"Se alega que estados de esta cuenta especial se remitieron por correo al demandado en enero 7, 1921 y julio 11, 1921, pero no hemos quedado convencidos, por el resultado de la prueba, que el demandado los recibiera, ni que se obligara en ningún momento a satisfacer la cantidad que la cuenta representa, ni sus intereses, no habiendo sido incluída dicha cantidad en el estado que personalmente entregara Rafael Baragaño al demandado, ni en el que se le remitiera por correo certificado en 7 de septiembre de 1921, por lo que estimamos que la demandante no ha establecido la alegación esencial en el hecho 4 de su demanda de la aceptación del estado de cuenta sin reparos por el demandado. No habiendo conformidad en esta cuenta, no existe el vínculo jurídico que sanciona el artículo 1245 del Código Civil.

"Por otra parte, en la demanda se alega que el demandado no ha satisfecho a la demandante el importe de la venta, o sea el giro por $4,400, cuando en la escritura de venta se confiesa recibido el precio de manos del comprador antes de ese acto; y consideradas todas las circunstancias de cómo la negociación tuvo lugar; de no haberse nunca cargado a la cuenta del demandado el giro por $5,900, a pesar de habérsele pagado y con su importe obtenido la finca de 52½ cuerdas, lo que tuvo lugar el día 19 de julio de 1920, esto es, antes que la demandante pasara el acuerdo en 23 de julio de 1920 para la compra al demandado de la referida finca y la venta de las 32 cuerdas; de estar el giro por $4,400 expedido simplemente a favor de Rafael Baragaño, el representante entonces de la demandante, para que éste le pagase a él la cantidad; de no haberse incluído la

suma que representa dicho giro en los estados de cuenta que le entregara al demandado el propio Rafael Baragaño y que se le remitiera por correo certificado días antes de la presentación de la demanda; de tener la finca de 52½ cuerdas en la fecha de la negociación un valor mayor de $20,000, según la declaración no contradicha del testigo Francisco Buxó, y de interesar dicha finca la demandante para el desagüe y drenaje de sus poyales y fincas limítrofes, nos llevan a la conclusión lógica de la certeza de la alegación del demandado, sostenida por su prueba, de que la verdadera causa o consideración del traspaso fué la cesión que el demandado hizo a la demandante de los derechos que él tenía, o sea la opción, sobre la referida finca de 52½ cuerdas, para lo cual se valoraron ambas fincas, la del demandado a $275 cuerda y la de la demandante a $150 el llano y $100 el cerro; y que el giro de $4,400 fué expedido para satisfacer a Rafael Baragaño, por aparecer en la escritura de venta el valor recibido; y por tanto que el demandado no es en deber a la demandante de cantidad alguna por el concepto alegado en la segunda causa de acción.''

El juez inferior no hizo otra cosa que dirimir un conflicto de evidencia en favor del demandado. Si hay algo en este pleito que puede impresionar a una mente libre de todo prejuicio es primero, la omisión de no haberse incluído dicha partida en ninguno de los extractos de la cuenta corriente que la apelante alega haber remitido al demandado, y segundo, las razones que se aducen para justificar tal omisión. De un lado se hacen depender del orden de la contabilidad y de otro, se descansa en motivos de orden legal.

La parte pertinente en ese extremo del testigo Comas, tenedor de libros de la central, es como sigue:

''¿Si hay un deudor cualquiera de su señoría, y ese deudor incurre en una nueva deuda, en una nueva partida, acostumbra usted cargar todas las partidas en esas cuentas?—No, no, según, depende; si la cuenta es por anticipo, por lo que sea, por anticipo se lo cargo en anticipo; pero si es por otro concepto no.

''¿En una cuenta corriente de colonos, o de cualquier clase, usted como profesional, usted acostumbra a abrirle a una misma persona tres o cuatro cuentas?—Si se da el caso, sí, señor.

''¿En estos libros hay muchos casos así?—No, el único caso que se ha dado es el suyo.

"¿ Quiere decir que el único caso que se ha dado es el mío entre todos los colonos de Pasto Viejo?—Sí, es el único caso que se ha dado.

"¿ Entonces es la única?—Es costumbre en Pasto Viejo, si no es costumbre en el sistema de teneduría de libros, que si usted tiene una cuenta de refacción, todos los negocios de refacción de cañas van en esa cuenta, y si usted abre otra cuenta por otro concepto, todos los otros cargos que se hacen que no sean por refacción, van a esa otra cuenta.

"¿ En Pasto Viejo nada más se hace?—Le repito que es costumbre de la Teneduría de Libros.

"¿ Cuántos años está Pasto Viejo en existencia?—Desde el año quince.

"¿ Y en ese lapso de tiempo es el único caso?—Siempre que hayan pasado por mis manos los libros es el único caso que se ha dado.

"¿ Por qué usted abrió una cuenta para la finca 'Fuentes' si en el giro ese decía que se le cargase a la cuenta de Arturo Aponte? —Porque eran los negocios completamente distintos.''

Y el abogado de la apelante para sostener al testigo, alega:

"Para nosotros resulta obvio que una operación de préstamo por $4,400 que representa el precio de ciertos terrenos vendidos por la demandante al demandado, en nada tiene que ver con otra operación completamente distinta por anticipos refaccionarios a cuenta de los gastos de las plantaciones de sus cañas. Esto en el sentido común o comercial. Ahora desde el punto de vista legal, los anticipos refaccionarios tenían una categoría muy distinta al préstamo de $4,400 siendo privilegiados aquéllos en virtud de lo previsto en el artículo 1823, inciso 6, del Código Civil, mientras que el precio aplazado de la venta no tenía privilegio alguno desde el momento que no fué garantizado mediante hipoteca ni de ninguna otra manera. Por consiguiente, no debió haberle extrañado a la corte inferior, y seguramente no afectará para nada en el ánimo de este Tribunal, el hecho de haberse abierto una nueva cuenta a nombre del demandado en los libros de la demandante con la partida de $4,400 en vez de haberla cargado a la cuenta de refacción.''

Si unas y otras razones fueran la verdadera causa para haber hecho del cargo de $4,400 una ''cuenta especial,'' ¿qué razón puede justificar, *pari materia,* que un giro a cargo de

la demandante y librado por el demandado para la compra de un automóvil fuera cargado en la cuenta corriente de refacción y no ser asimismo objeto de la cuenta especial? En otro pasaje de la declaración del tenedor de libros encontramos lo siguiente:

"¿Sabe Ud. si después de remitir dicha cuenta se le anticipó al señor Aponte algún dinero para la compra de un Packard?—Sí, señor.—¿Cómo lo sabe?—Lo sé porque vino un giro a cargo de la oficina del Tesorero y a favor de la Packard Motor Dealers."

Y del exhibit No. 3 aparece el asiento por $1,200 hecho en la cuenta corriente de refacción. Igualmente existe otra partida por "venta de 10 vagones de leña" cargada en la cuenta de refacción.

Todo esto lo que hace es levantar fuertes sospechas en cuanto a la existencia de la llamada "cuenta especial" y dar más apariencia a la contención del demandado, de que no debiéndose realmente, nunca fué objeto de cargo en los libros de la central.

Se insiste, sin embargo, por la apelante que ella remitió al demandado copia de la "cuenta especial" en enero 7, 1921, y en julio 11, 1921. No consta en los autos ningún dato fehaciente que demuestre la remisión de tal copia en dichas fechas. Los testigos Comas y Walker no estuvieron contestes en cuanto a detalles esenciales de la de julio 11, 1921. Mientras el último afirma que tal copia estuvo en sus manos y estaba escrita en maquinilla, al menos las cifras, el primero declara que se hizo en manuscrito y que no se conservó la copia en carbón. De ahí el poco peso de esas declaraciones.

La prueba tendió a establecer que la finca "Janer" de 52½ cuerdas, estaba arrendada al demandado con una opción de compra por precio convenido de $10,000 al final del arrendamiento. La finca colindaba con terrenos de la apelante y durante el arrendamiento esta parte con permiso revocable del demandado practicó un drenaje en la finca arren-

dada que permitía el desagüe de otras fincas de la apelante. Tal drenaje según el testimonio del administrador Baragaño era importante. El demandado interesaba una porción de la finca "Fuentes" que colindaba a su vez con sus terrenos. Surgió el negocio y la apelante exigió que se le traspasara la opción, pero sostiene que el convenio consistió simplemente en vender ella la porción de la finca "Fuentes" al demandado por precio de $4,400 y comprar independientemente la finca "Janer" por $10,000 y no como alega el demandado que la opción la cedió a la apelante a cambio de un pedazo de la finca "Fuentes," la que tasada en $4,400 es la diferencia de $14,437.50, valor de tasación de la finca "Janer," después de cubierto el precio primitivo de opción ($10,000) y despreciarse la pequeña cantidad de $37.50. Durante la negociación el primitivo dueño de la finca "Janer" la había traspasado a un tercero. Sin detenernos a examinar los efectos de la opción en relación con ese traspaso, es lo cierto que el demandado adquirió no obstante la finca del tercero por valor de $10,900, que pagó reservándose $5,000 para aplicarlos a una hipoteca que por igual suma pesaba sobre el inmueble, y $5,900 restantes en un giro que libró el demandado y pagó el Banco Comercial con cargo a la apelante. De este giro no se hizo ninguna operación en los libros de la apelante. El hecho de que el demandado no adquirió para sí la finca "Janer", pues cinco días después otorgó escritura de la misma a la apelante, es más bien aparente. Aun cuando dentro de un sistema de contabilidad más formal o estricto no excusaba a la corporación no darle entrada y salida a dicha suma en la cuenta del demandado, la razón verdadera de no hacerlo se debió á que realmente el demandado no era deudor de la misma. Parece inferirse lo mismo de la cantidad de $4,400. El mismo día que se otorgó la escritura de la finca "Janer," 24 de julio de 1920, la apelante aparece vendiendo subsiguientemente parte de la finca "Fuentes" al demandado por $4,400, valor recibido. El administrador Baragaño recibió, sin embargo, un giro a

su nombre personal con cargo a la apelante.   Salta a la vista que la forma elegida no era la más usual de hacerse el pago. Era más lógico que si la escritura no decía la verdad en cuanto a la confesión del recibo del precio por la apelante, un aviso o carta a la apelante hubiera sido un medio suficiente para aclarar el punto, si es que otra era la verdad y se convenía aplazar el pago.   Esta es una circunstancia más a las ya discutidas que dan más colorido a la explicación del demandado cuando dice que el giro se expidió para satisfacer un escrúpulo personal del administrador Baragaño, pues como confesaba el recibo del precio a nombre de la apelante, deseaba tener un "resguardo" de lo que en contrario decía la escritura.   A pesar de esto, Baragaño lo endosó a la apelante, diciéndose:

"Páguese a la Central Pasto Viejo, Inc., de San Juan, P. R., con cargo al Sr. Arturo Aponte, Jr., y con abono a fincas rústicas, como importe de treinta y dos cuerdas de terreno que le fueron vendidas de las fincas Fuentes, en esta misma fecha.—Humacao, P. R., Julio 24 de 1920.—(fdo.) Rafael Baragaño."

Baragaño admite por otra parte que la fecha del endoso aparece con cierta corrección y no recuerda si el endoso fué puesto en la misma fecha que lleva el documento.   En el libro de cuentas corrientes (*loose leaves*) aparece hecho el cargo en agosto 2, 1920, y la hoja con ese sólo asiento; pero en relación con el valor probatorio que pudiera tener dicho libro, el testigo Comas declara:

"Dígame, señor Comas, ¿ a estos libros se le pueden sacar las hojas éstas o no?—Sí, señor.

"¿ Se le pueden sacar las hojas?—Sí, señor.

"Cuando ustedes han cometido o han realizado equivocaciones, ¿cambian las hojas?—No, no se acostumbra, si me he equivocado hago el descargo, como hay una partida ahí que hice el descargo y volvió y se le abonó.

"Yo no me refiero a eso, sino a una cuenta que hayan confundido de un individuo con otro, si se han equivocado, y han cambiado las hojas?—No, no.   No ha habido eso.

"¿ Y si lo hubiera habido?—Se saca la hoja."

Dada esta prueba, se debió completar con el asiento que debió hacerse en el libro diario, para llevarlo al de cuenta corriente. Por lo menos el "diario" aunque no hubiera sido un dato que por sí solo demostrara la contención de la apelante, hubiera por lo menos quitado toda sospecha respecto a la posibilidad de hacerse un cambio de hojas en el "*loose leaves*" de cuentas corrientes.

El acuerdo de la junta de accionistas en que por último se apoya el apelante, no aparece tan claro ni bastante en sí mismo para justificar las alegaciones de la demanda. Además, la junta de directores ya había acordado antes la operación, y la consumación del convenio también se había iniciado con la compra por el demandado de la finca "Janer." El presidente de la corporación, Rafael Fabián, confirma, más o menos, ese extremo, expresándose así:

"Señor Fabián, usted bondadosamente podría decir a la corte si cuando se pasó esta resolución aprobando o autorizando la venta ¿se había hecho ya la operación o no se había hecho?—Se había hecho, siempre a reserva de aprobación de la junta de directores."

Si el acuerdo de la junta de accionistas, única autoridad, según se alegó, dentro de las cláusulas de la corporación facultada para disponer de los bienes raíces, no es conforme con los actos de los agentes que intervinieron en la operación, no es cuestión que ha sido sugerida ni es el *issue* de este pleito.

No hemos podido, por tanto, ser convencidos por la propia conducta y actos de la apelante de que la prueba en conjunto no sostenga la conclusión de la corte inferior en sentido de que la cantidad de $4,400 representaba la consideración de la opción de compra de la finca "Janer" que el demandado cedió a la apelante.

[5] No encontramos motivos para sostener el error que se imputa por costas. La demandante no obtuvo una declaración favorable de todas sus peticiones y la corte inferior

no cometió abuso de discreción al dictar la sentencia y declarar "sin especial condenación de costas."

En resumen, la sentencia de la corte inferior *debe revocarse* en cuanto declaró no haber lugar al pago de las partidas de $40 y $430.14, ordenándose que la demandante recobre del demandado dichas sumas en adición a la de $6,956.26 ordenada por la referida sentencia, o sea, en junto, $7,426.40, y *confirmarse* en todos sus demás pronunciamientos apelados por la demandante.

El Juez Asociado Sr. Wolf firmó así: "Por creer que no se puede fraccionar o dividir una apelación en la forma que se hizo en este caso, lo que me reservo expresar en una opinión, no estoy conforme con la revocación."