WILLIAM H. ARMSTRONG, demandante y apelado, *v.* F. E. JONES, demandado y apelante.

No. 5548.—*Sometido:* Junio 8, 1932. *Resuelto:* Marzo 20, 1933.

*Pellón & Ayuso,* abogado del apelante; *Leopoldo Feliú,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En marzo 14, 1928, se inició este pleito por demanda contentiva de las siguientes alegaciones:

"Que con anterioridad al día 5 de junio de 1915 el demandado recibió del demandante, a préstamo la suma de $1,300, sin que se fijara plazo para su pago, cuyo préstamo se acreditó en documento privado que otorgó y entregó el demandado al demandante, habiéndolo suscrito ante Notario Público, el cual documento copiado literalmente es como sigue:

" '$1,300.—En virtud del presente hago constar que adeudo a Mr. W. H. Armstrong, Capitán del ejército, la suma de MIL TRESCIENTOS DOLLARS, procedente de préstamo que me hiciera.—San Juan P. R., a cinco de junio de mil novecientos quince.—(Fdo.) F. E. Jones—Affidavit No. 161—Suscrito ante mí por Mr. F. E. Jones a quien conozco.—(fecha) supra.—(Fdo.) Damián Monserrat, Notario Público.—Sellos de Rentas Internas.—Sello Notarial.'

"Que el demandado no ha pagado total ni parcialmente la ameritada suma ni cantidad alguna a cuenta de los intereses devengados por la misma, aun cuando ha sido requerido para ello por este demandante."

Excepcionó el demandado la demanda alegando que de la faz de la misma no aparecía que el demandante tuviera capacidad para demandar y que la demanda no aducía hechos suficientes para determinar una causa de acción. La corte declaró sin lugar las excepciones, concediendo al demandado un término para contestar. Compareció entonces el demandado y expuso que no estaba en condiciones de admitir o negar la autenticidad del documento transcrito en la demanda, por cuyo motivo pedía a la corte que ordenara al demandante que le permitiera inspeccionar el documento.

Así las cosas pidió el demandante que se le permitiera enmendar su demanda insertando en ella una segunda causa de acción fundada en dinero prestado al demandado y recibido por éste, basándose en que al enterarse los abogados del demandante de la petición de inspección formulada por el demandado, residiendo el demandante en los Estados Unidos, a

fin de poder con él comunicarse, obtuvieron de los abogados del demandado el tiempo necesario para investigar el paradero del pagaré y que practicada la investigación no ha podido encontrarse el documento "habiéndose extraviado, cuando el demandante estaba bajo la creencia y convicción de buena fe de que el mismo se encontraba en poder de un agente o apoderado que tuvo en Puerto Rico, con anterioridad a la iniciación de este litigio."

La corte oyó a ambas partes y permitió la presentación de la demanda enmendada. La segunda causa de acción quedó formulada así:

"3.—Que allá por el mes de junio de 1915, el demandante entregó al demandado, a solicitud de éste, y recibió del mismo, la suma de $1,300, los cuales el demandado prometió pagar al demandante sin que se fijara fecha para verificar tal pago.

"4.—Que el demandado no ha pagado total ni parcialmente la ameritada suma, ni cantidad alguna a cuenta de los intereses devengados por la misma, aún cuando ha sido requerido para ello por este demandante."

Declarada sin lugar cierta moción eliminatoria presentada por el demandado, adujo éste las excepciones previas de falta de hechos, indebida acumulación de acciones, y ambigüedad. Desestimadas las excepciones, insistió el demandado en su petición de inspección del documento. Manifestó el demandante que sólo tenía en su poder una copia, por haberse extraviado el original, que ponía a disposición del demandado para su examen.

Terminado de ese modo el incidente, contestó el demandado en la siguiente forma:

"Contestando la primera alegación de la primera causa de acción de la demanda enmendada, el demandado niega que haya tenido con el demandante transacción de préstamos en la fecha alegada en la demanda enmendada ni en ninguna otra fecha; niega haber suscrito y entregado el documento relacionado en la demanda enmendada ni ningún otro documento en ocasión alguna; y alega además el demandado que solicitó del demandante le exhibiera el documento original copiado en la alegación primera de la demanda en-

mendada no habiéndoselo mostrado a pesar de las repetidas solicitudes para que le fuese mostrado.

"Niega el hecho segundo de la primera causa de acción.

"En cuanto a la segunda causa de acción el demandado niega todos los hechos alegados en dicha segunda causa de acción de la demanda enmendada en este caso.

"Como defensa especial el demandado alega que las causas de acción ejercidas se hallan prescritas a tenor de lo dispuesto en los artículos 1862 y siguientes del Código Civil."

Fué el pleito a juicio el 2 de abril de 1930. Aportó el demandante como evidencia las declaraciones de los testigos William A. Hutton, Pedro del Manzano, Aces E. Watson y Damián Monserrat Simó, su deposición y documentos. Adujo el demandado en evidencia su propia declaración y un documento.

Al comenzarse la vista pidió el demandado a la corte que ordenara al demandante que eligiera entre sus dos causas de acción y el demandante contestó: "Nosotros elegimos ir al juicio con la segunda causa de acción—en cobro de dinero— por dinero prestado al demandado y no satisfecho por éste."

Declaró primeramente Hutton, que conoce al demandante hace muchos años quien residió en Puerto Rico y hace como catorce o quince años salió de aquí, encontrándose actualmente en Babylon, Long Island, New York.

Siguió el testigo del Manzano, Secretario Interino de la corte, quien reconoció un sobre que indicaba contener la deposición del demandante, que había sido recibido en octubre 9, 1929 y permanecido bajo la custodia del Secretario de la corte, Vergne, y luego bajo la del declarante; lo abrió y extrajo la deposición que quedó identificada y descrita detalladamente en el récord y fué entregada al abogado del demandante que la ofreció en evidencia.

En su deposición dijo el demandante que es actualmente Arquitecto de Paisajes de la Comisión de Parques en Long Island y fué antes Capitán del Ejército Regular de los Estados Unidos, que residió en Puerto Rico como catorce años hallándose en San Juan el 5 de junio de 1915. Conoce al

demandado Jones desde 1900. "Mr. F. E. Jones y yo fuimos dueños con participación igual de una finca sita en Toa Alta, Puerto Rico. Allá por el mes de septiembre de 1908, Jones y yo convinimos en terminar nuestra sociedad y hecha la liquidación me debía $1,500, por los cuales él me dió una hipoteca sobre la propiedad . . . allá por el día 22 de diciembre de 1911, cuando vivía en el Cuartel Militar en San Juan, Jones vino donde mí y me propuso que yo cancelara esa hipoteca para que él pudiera llevar a cabo una proposición que tenía pendiente para un préstamo, lo cual yo acepté con la condición que él me daría evidencia escrita de su deuda para conmigo. De septiembre de 1908 a diciembre de 1911, él no había pagado intereses. En diciembre 22 de 1911 pagó $500 que se debían como intereses. Cancelé la hipoteca y le esperé hasta junio 5 de 1915, antes de que yo pudiera conseguir de él que me reconociera su deuda para conmigo. Aun cuando no se hicieron pagos subsiguientes por intereses— aparece aquí en manuscrito y con las iniciales W. W. W. 9 por ciento—o parte alguna del principal se hizo jamás, reduje el bill, la cuenta real, la cuenta verdadera, que entonces estaba vencida en junio 5, 1915, a $1,300 a fin de conseguir de él que fuera conmigo a la oficina del señor Damián Monserrat y firmara un reconocimiento de su deuda para conmigo. Tuve éxito en conseguir que el señor Jones firmara el documento transcrito en la demanda evidenciando su deuda para conmigo. No se fijó plazo para su vencimiento entonces en dicho documento, pero fué entendido que él habría de pagar el mismo a la demanda, a la vista. . . . Dicho papel o documento se firmó el día 5 de junio de 1915, ante el Notario Público Damián Monserrat, de San Juan, Puerto Rico, por Mr. F. E. Jones, el demandado."

Se entregó al deponente un documento identificado con el No. 1 y adherido a la deposición y dijo: ". . . es una copia correcta y fiel en manuscrito del documento original otorgado por Mr. Jones a mi favor ante el Notario Público señor Damián Monserrat, de San Juan, Puerto Rico, ya mencio-

nado. . . . El documento original fué remitido al ahora finado, al que fué Frank P. McCurdy, allá por junio 19 de 1915, entonces Sub-Auditor de Puerto Rico, con una carta solicitando de él que me ayudara a cobrarle a Jones la cuenta. Antes de enviar el original, hice una copia de mi propio puño y letra. Ése es el papel marcado documento IDENTIFICACIÓN No. 1. El señor McCurdy fué un amigo muy íntimo en quien yo confié todos mis asuntos de negocio en Puerto Rico. Él estaba bien al corriente de la cuenta que me debía Jones. Desde la muerte del señor McCurdy el documento no se ha encontrado.''

Se desprendió del documento por primera vez ''allá por junio 19 de 1915, cuando le escribí a F. P. McCurdy, de San Juan, Puerto Rico, y le incluí el mismo en una carta que escribí en Washington, D. C.''

Al no encontrarse ''escribí a mi representante W. A. Hutton, de San Juan, Puerto Rico, que viera a los miembros de la familia McCurdy y se esforzara por encontrarlo.''

A la pregunta: ''¿Quién escribió el documento Identificación No. 1'', contestó: ''Yo, William Henry Armstrong. . . Las palabras son exactamente las mismas; una copia correcta y fiel. El original fué sellado con el sello notarial del notario público señor Damián Monserrát, en San Juan, Puerto Rico. . . . El señor Jones rara vez contestó las cartas que yo le escribía. . . . Mi libro-registro de cartas demuestra que yo le escribí en las siguientes fechas con relación a su deuda para conmigo: mayo 13, 1913, sin contestación; agosto 26, 1913, sin contestación; febrero 5, 1914, sin contestación; mayo 29 de 1914, sin contestación; agosto 3 de 1914, sin contestación; octubre 10, 1914, certificada, sin contestación; abril 28, 1915, sin contestación; mayo 4, 1915, sin contestación; diciembre 7, 1916, sin contestación; febrero 21, 1917, sin contestación; marzo 25, 1917, contestó que no tenía dinero; septiembre 8, 1918, a la cual no contestó; y noviembre 4, 1918, a la cual no contestó. . . No solamente le he escrito cartas bondadosas sino que le he ofrecido rele-

varle del pago de los intereses si él me pagaba el principal. Le he ofrecido transigir a base de cantidades mensuales o en cualquier otro modo conveniente para él. Jamás me ha dado contestación alguna.''

Ni el demandado ni persona alguna a su nombre le han pagado en todo ni en parte la deuda.

La deposición fué finalmente admitida como prueba con todas las objeciones que mientras iba leyéndose fué formulando el demandado y que constan del récord, una sola de las cuales—la relativa al contenido de una contestación del demandado a una de las cartas que dijo el demandante que le había escrito—fué declarada con lugar.

William A. Hutton fué comisionado por el demandante para que entregara el asunto a un abogado y para buscar el documento a que se refiere la demanda. En ese sentido practicó gestiones infructuosas cerca de la Sucesión McCurdy.

La Srta. Watson reside en Puerto Rico desde hace veinte y cinco años y es hermana de la esposa del Sr. McCurdy, fallecido en 1924. Antes de su fallecimiento, todos los asuntos de McCurdy ''eran discutidos en nuestra familia, y después de su muerte yo fuí su albacea. . . . He buscado ese documento porque conocí de su existencia cuando vivía el Sr. McCurdy. . . . No lo he podido encontrar después de su muerte.''

Se le leyó el documento identificación 1 y contestó: ''Ése era el documento cuyo original yo buscaba.'' Y a repreguntas del abogado del demandado pidiéndole que comparara el documento transcrito en la demanda con el que aparece en la copia presentada como prueba, contestó finalmente: ''Yo no veo mucha diferencia entre ellos con excepción del tipo de interés, pero puedo decirle que no puedo recordarme de eso. Yo sé que el señor McCurdy recibió el documento.''

Seguidamente se llevó al récord la siguiente estipulación:

''Dte. Señor Juez, por estipulación de las partes, se conviene que si el Notario Don Damián Monserrat estuviera presente en Corte con su libro-registro de affidavits del año 1915, aparecería de dicho

libro y declararía dicho testigo que en el folio 27 del libro-registro de affidavits de su notaría, del expresado año 1915, aparece el siguiente asiento: 'Número 161—Junio 5—F. E. Jones firma y jura documento de deber a W. H. Armstrong la suma de Mil Trescientos Dólares dádole a préstamo.'

"Ddo. Admitimos que declararía eso; que aparece un asiento por un tal F. E. Jones."

Entonces ocurrió lo que sigue:

"Dte. Y ahora, señor Juez, como prueba de corroboración de la operación de préstamo, y habiendo establecido que el original del documento marcado 'Identificación No. 1' se ha extraviado y no se ha podido encontrar, ofrecemos este documento identificación No. 1 como prueba en el caso.

"Ddo. Para oponernos por la razón de que la mejor prueba es el original, y además porque no ha sido debidamente identificada la firma de la persona que firmó ese documento. F. E. Jones puede ser Frank E. Jones, Frederick E. Jones, pero no se ha probado todavía que ésa sea la firma del demandado.

"Juez. La Corte lo admite para tenerlo en cuenta en relación con la deposición del demandante. Se marca EXHIBIT No. 4 del demandante.

"Ddo. Tomamos una excepción por los fundamentos de la objeción.

"Dte. Ése es nuestro caso."

En mayo 1, 1930, continuó la vista del litigio. Inició su prueba el demandado con su propia declaración. Conoció en Puerto Rico al demandante. Tuvo negocios con él. Le pagó todo lo que le debía. Le compró su interés en una propiedad que poseían mancomunadamente. Le pagó en dinero efectivo. Le debía $1,500 y se los pagó. Sobre donde se hizo constar el pago contestó: "Es muy difícil recordar porque hace tantos años, pero sé que es la escritura en que él canceló la hipoteca."

Se ofreció la escritura en evidencia y se admitió con la oposición del demandante.

Siguió el interrogatorio directo, así:

"P. Señor Jones, ¿ha visto usted alguna vez el original del documento que aparece marcado Exhibit 4 del demandante?—R. Cuando

esta propiedad fué originalmente comprada, Armstrong pagó el dinero porque él sabía que había un comprador que pagaría más dinero por ella, que era un negocio para él, y después resolvimos retener la propiedad y no venderla. Yo estaba pagándole a Armstrong mi parte hasta que la liquidé. Armstrong no hubiese estado en el negocio si no hubiese sido una cuestión que le hubiera dejado algo a él, porque es un hombre de negocio. Le pagué la cantidad original primero, y después le pagué mi participación.—P. Pero mi pregunta es ¿Firmó usted un documento cuya copia es el Exhibit 4 del demandante en la fecha de julio o junio 5 de 1915?—R. Yo no recuerdo tal transacción.—P. ¿Alguna vez le escribió Mr. Armstrong a usted cobrándole?—R. No recuerdo haber recibido ninguna carta de Mr. Armstrong desde que se fué de Puerto Rico hace muchos años. —P. ¿Alguna otra persona a nombre de Mr. Armstrong trató de cobrarle algún dinero a usted?—R. Nadie en absoluto a excepción de estas dos personas.—P. ¿A quiénes se refiere usted?—R. A Mr. y Mrs. Hutton.— . . . P. ¿Entonces la primera vez que usted tuvo noticias de que estaban tratando de cobrar la alegada deuda fué cuando usted fué citado por la Corte?—R. Sí, señor.—P. ¿Conoció usted a Mr. McCurdy, Frank McCurdy?—R. Sí, le conocía.—P. ¿Trató él de cobrar la alegada deuda de usted?—R. No, nunca.—P. P. ¿Entonces usted puede afirmar que usted no ha firmado el documento Exhibit 4 del demandante?—R. No recuerdo tal documento; no recuerdo haber firmado tal documento, y si existe ese documento, podría presentárseme a ver si es verdad. No recuerdo haberlo firmado.—Ddo. Eso es todo con el testigo.''

Las repreguntas ocupan muchas páginas de la transcripción y son difíciles de resumir. Haremos referencia a las más salientes. Presentádole el certificado del Notario Sr. Monserrat, contestó: "No recuerdo tal transacción; yo no recuerdo ese documento; yo no recuerdo haber visto tal documento. . . . —P. Señor Jones, una vez más. Exhibiéndole a usted el Exhibit 3 del demandante, que le pido que lea, y llamando su atención especialmente al asiento que aparece ahí del Registro de *Affidavits* del Notario Damián Monserrat, ¿puede usted decir a la corte si ese asiento y lo que se relaciona en él es cierto, o es falso? Conteste la pregunta.—R. No sé nada en relación con este documento. Si usted tiene el documento, ¿por qué no lo presenta?''

Cuando terminó de declarar el demandado y con su declaración y la presentación de la escritura de cancelación de hipoteca su prueba, ofreció el demandante la declaración del notario público Sr. Monserrat.

Preguntó el abogado del demandante:

"Pero poniéndole de manifiesto el Exhibit 3 del demandante, usted puede decir si este señor que está aquí sentado—señalando el abogado al testigo que acaba de declarar, F. E. Jones—si este señor que está aquí sentado es el mismo que firmó el documento que se relaciona en el asiento que usted transcribe en ese exhibit?—T. Sí, señor, sí.—A. ¿Es el mismo?—T. El mismo."

Y preguntó el abogado del demandado:

"Una pregunta. ¿Usted recuerda el documento que firmaron ante usted?—T. Un documento. . . . Lo que diga en el affidavit.—A. Pero el documento en sí, el contenido del documento.—T. Sí. Reconociendo deber $1,300. Lo que dice ahí.—A. ¿Podría ser otra persona, otro F. E. Jones, que haya ido o hubiese ido a firmar allá ese documento?—T. Yo lo conozco hace muchos años a él.—A. ¿Pero usted cree que fué él?—T. Sí, señor."

La sentencia de la corte fué como sigue:

" . . . declara con lugar la demanda, en su segunda causa de acción, y condena al demandado Franklyn Elmer Jones, a pagar al demandante William Henry Armstrong, la suma de $1,300 de principal, fijándose el plazo de sesenta días para el pago de dicha suma contado a partir de aquél en que sea firme la sentencia, con más los intereses de dicha suma al 6 por ciento anual desde el vencimiento del plazo y hasta el completo pago de la deuda, y las costas."

En su relación del caso y opinión analizó la corte la evidencia, resolviendo el conflicto de la misma en pro del demandante, y agregó:

"El documento no fija plazo para el pago. La corte lo señalará, y el cual será de sesenta días contados desde aquél en que sea firme la sentencia. Nicorelli vs. López & Co., 26 D.P.R. 56; Seoane vs. Cortés, 40 D.P.R. 73. Tampoco se convino en el documento, ni se ha probado que se conviniera, el pago de intereses. El hecho de que con anterioridad al documento se pagaran intereses legales, no es causa para concederlos en este caso. Si hubo el convenio de-

bió incluirse en el documento. No hay derecho a reclamar y cobrar intereses cuando no ha habido pacto expreso con respecto a los mismos. Central Pasto Viejo, Inc. vs. Aponte, 34 D.P.R. 890.

"Y si la obligación no establece plazo para el pago tampoco debe cargarse el interés legal del 6 por ciento anual desde la fecha del documento, 5 de junio 1915, ni desde la interposición de la demanda, sino desde la fecha en que el demandado deba satisfacer la deuda, vencido el plazo fijado para su pago.

"En cuanto a la prescripción, el demandado no ha especificado el artículo en que se funda. Se trata de una acción personal, sin término especial señalado en la ley, que prescribe a los 15 años. Art. 1865, Código Civil. La obligación reconociendo la deuda fué firmada y entregada el 5 de junio de 1915, y habiéndose presentado la demanda original para su cobro el 14 de marzo 1928, dicho término de 15 años no había transcurrido."

■ A nuestro juicio la sentencia de la corte debe confirmarse. Once son los errores que señala el demandado apelante en su alegato. Refiérese el primero a la admisión de la demanda enmendada. Es bien claro que "enmiendas a las alegaciones que alteren materialmente la causa de acción, o que aduzcan una esencialmente distinta o que la materia que cubran sea enteramente extraña a la demanda original, no son permisibles", (*González Reyes* v. *González,* 43 D.P.R. 833; *Martí* v. *Am. R. R. Co.,* 28 D.P.R. 737), pero aquí no se trata de dos causas de acción distintas, sino de la misma causa de acción expuesta de distinto modo; y si pudiera advertirse alguna ambigüedad, desapareció por completo cuando al comenzar el juicio la parte apelada escogió proseguirlo bajo una sola de las dos causas de acción alegadas en su demanda.

■ Se sostiene por el segundo señalamiento que la admisión de la copia del documento firmado por el demandado reconociendo su deuda para con el demandante, constituye un grave error que lleva consigo la revocación de la sentencia.

No estamos conformes. La copia fué presentada como prueba de corroboración de la operación de préstamo, después de la amplia y detallada deposición del demandante, de las declaraciones del Sr. Hutton y de la Srta. Watson y de la

estipulación con respecto al asiento existente en el registro del notario Sr. Monserrat, evidencia que tendía en conjunto a demostrar la existencia real y efectiva de la transacción y del documento original, la pérdida de éste y la igualdad substancial de la copia con el original. La única diferencia advertida, el pago de intereses, fué resuelta por la corte en favor del demandado apelante. Artículo 24 de la Ley de Evidencia, Comp. 1911 p. 300. *Burgos* v. *Báez,* 17 D.P.R. 631 y *Central Pasto Viejo* v. *Aponte,* 34 D.P.R. 890.

■ Versa el tercer señalamiento sobre la credibilidad de la testigo Srta. Watson. No está bien fundado, a nuestro juicio. Hemos leído y estudiado cuidadosamente la declaración y no creemos que pueda deducirse de sus propios términos, de la manera como se condujo y declaró la testigo, que su testimonio no merece crédito. Las vacilaciones que puedan notarse son las naturales que explican los años transcurridos y lo frágil de la memoria humana especialmente en cuanto a detalles. No se advierte vacilación alguna en cuanto a la existencia del documento y en cuanto a su significación esencial.

Los señalamientos cuarto al noveno se refieren todos a errores que se alegan cometidos al permitir que quedaran en el récord contestaciones contenidas en la deposición del demandante y ésta misma con tales defectos. Se argumentan en el alegato conjuntamente, prácticamente limitándose el apelante a reproducir las constancias del récord taquigráfico.

No se impugna la toma de la deposición en sí. Lo fué en verdad cumpliéndose con todos los requisitos que para tales casos señala la ley. Se impugna que se permitió al demandante declarar sobre la naturaleza de la transacción, sobre el contenido de un documento que no estaba en evidencia, sobre lo que ocurriera con el original del documento, sobre la manera de comparar la copia con el original y sobre las cartas que escribiera el demandante al demandado, y, además, el haberse aceptado la deposición en general no obstante las anteriores objeciones.

Basada la acción en la transacción celebrada y no en el documento, lógico era que el demandante declarara sobre su naturaleza y antecedentes.

Deponía el testigo para ser admitida o no su declaración luego en el juicio. Correcto fué permitirle declarar sobre un documento que no se había presentado ni admitido aún en evidencia, pero que se le mostró identificándolo en debida forma.

Con respecto a lo que con el original del dicho documento ocurriera, natural fué también que se le preguntara al testigo y se le permitiera declarar, ya que era necesario sentar las bases de lo ocurrido para poder aplicar la excepción admitiendo en evidencia la copia en vez del original como ordena la regla.

Y la pertinencia de la contestación sobre la manera de comparar la copia con el original, es consecuencia de lo que acabamos de resolver.

Sobre las cartas y su envío declaraba la misma persona que las escribió y envió. Fueron dirigidas al propio demandado y en su poder debían encontrarse. Él podía aceptar o negar como negó luego el haberlas recibido, correspondiendo a la corte decidir el conflicto entre ambos testimonios. Cuando el demandante fué más lejos de lo que podía refiriéndose al contenido de una contestación que dijo haber recibido del demandado y éste objetó, la corte, como ya hicimos constar, declaró con lugar la objeción.

No estando bien fundados los señalamientos cuarto al octavo, cae el noveno por su base.

El décimo error se formula así: ''La corte cometió un grave error al declarar que la parte demandante probó su caso fundado en la segunda causa de acción alegada en la demanda enmendada y por consecuencia declarar como declaró con lugar la demanda enmendada en cuanto a su segunda causa de acción.''

No existe, a nuestro juicio. El préstamo, entrega y recibo del dinero se demostraron por la declaración del deman-

dante, el asiento del registro notarial y la copia del documento otorgado por el propio demandado reconociendo su deuda, y que ésta no fué satisfecha con la declaración del demandante.

Frente a esa prueba sólo presentó el demandado la escritura de 1912 y su propia declaración que no pudo ser en verdad más evasiva.

La escritura quedó explicada por la prueba del demandante. Se convino liberar la finca siempre que el demandado reconociera su deuda que se fijó en $1,300. Cumplió su parte el demandante. El demandado tardó más de dos años en comenzar a cumplir la suya, otorgando el documento notarial cuya copia se introdujo en evidencia.

El error envuelve el peso de la prueba y ya dijimos que el conflicto fué resuelto por la corte sentenciadora en pro del demandante y agregaremos ahora sin que se haya demostrado error, ni menos pasión, prejuicio o parcialidad.

El último señalamiento se refiere a las costas. Decidido el conflicto de la evidencia en contra del demandado, la imposición de las costas está justificada enteramente.

*Debe confirmarse la sentencia recurrida.*