Boneta, Demandante y Apelante, *v.* Boneta et al., Demandados y Apelados, y Strube, Interventor y Apelado.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre otorgamiento de escritura.

No. 1671.—Resuelto en julio 18, 1919.

Compraventa—Validez de la Compraventa Aunque el Precio no se Hubiera Pagado—Precio.—Existiendo en el contrato de compraventa de que se trata en este caso los elementos necesarios para darle vida, o sean, sujeto, objeto y causa, la circunstancia de que el comprador no hubiera llegado a entregar el precio al vendedor, no impide concluir que la sucesión de éste está obligada a cumplirlo, recibiendo el precio y otorgando la correspondiente escritura.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Antonio Suliveres y José G. Torres.*

Abogados del apelado: *Sres. R. Agrait Aldea, L. Mercader, Pedro Amado Rivera, y O. M. Wood.*

Abogados del interventor: *Sres. Enrique Rincón y Scoville & Kelley.*

EL JUEZ ASOCIADO SR. DEL TORO emitió la opinión del tribunal.

En 23 de noviembre de 1912 falleció en la ciudad de Arecibo don Tomás Boneta. Dejó como herederos numerosos hijos. A instancia de parte interesada se nombró administrador de su herencia a Charles E. Lawton.

Uno de los hijos, Luis Celestino Boneta, estableció la demanda origen de este pleito dirigida contra la sucesión de don Tomás, representada por el dicho administrador y los otros herederos. En la demanda se alega la celebración de cierto contrato de compraventa de una finca rústica denominada "Jobo", de mil cien cuerdas, sita en Río Arriba, Arecibo, entre el demandante y el causante de la sucesión, y se pide que se condene a la sucesión a cumplirlo, otorgando la correspondiente escritura.

En el pleito intervino Leopoldo B. Strube y alegó, en resumen, que era dueño y se encontraba en posesión de la finca de que se trata, que le fué vendida por don Tomás Boneta por el precio aplazado de cinco mil pesos que estaba dispuesto a entregar. Pidió que se dictara sentencia condenando a la sucesión a cumplir el contrato, recibiendo el precio y otorgando la correspondiente escritura.

Los herederos demandados unos se allanaron a la demanda, otros se opusieron alegando que la venta invocada por el demandante Luis Celestino Boneta fué simulada entre padre e hijo, y otros dejaron de contestar. En cuanto a la demanda de intervención, dos herederos negaron sus hechos, otros dos alegaron que existió en efecto un contrato verbal entre Boneta y Strube pero que quedó nulo por falta de cumplimiento por parte de Strube; nueve sostienen que Strube poseía la finca como arrendatario y no como dueño; Luis Celestino Boneta aceptó algunos hechos de la intervención y negó otros, y el resto de los demandados no contestó.

Fue el pleito a juicio y se practicó una larga prueba documental y testifical. Finalmente la corte dictó sentencia declarando sin lugar la demanda de Luis Celestino Boneta y con lugar la demanda de intervención condenando en su consecuencia a los demandados a que otorguen a favor de Leopoldo B. Strube escritura pública de venta de la finca en cuestión, llevándose a efecto el otorgamiento mediante la entrega por Strube a los demandados en dicho acto de la suma de cinco mil dólares más los intereses a razón de cincuenta dólares mensuales adeudados por Strube desde el 1°. de julio de 1911. De esa sentencia apeló solamente Luis Celestino Boneta.

El recurso se vió primeramente ante tres de los jueces de esta corte y luego ante el tribunal en pleno. Hemos estudiado cuidadosamente las alegaciones, las pruebas y los alegatos escritos e informes orales de los abogados y no tenemos duda alguna de que la demanda de Luis Celestino Boneta estuvo bien declarada sin lugar. La prueba practicada fué ampliamente analizada por el juez sentenciador. En algunas apreciaciones no estamos conformes con el análisis, pero todos lo estamos con el resultado del mismo.

La mayor dificultad al penetrar en el fondo de este asunto para dictar la resolución que proceda en justicia se encuentra en el estudio de la prueba con respecto a si el contrato, que no hay duda alguna que comenzó a celebrarse entre Tomás Boneta y Strube, llegó a perfeccionarse y continuó en todo su vigor, de tal manera que la Sucesión Boneta venga obligada a cumplirlo.

En primer lugar se levanta la cuestión de si no habiendo apelado ninguno de los componentes de la Sucesión Boneta, excepto el demandante Luis Celestino, esta corte debe limitarse, una vez que se ha convencido de que la demanda estuvo bien desestimada, a confirmar la sentencia. Nos inclinamos a resolver tal cuestión en el sentido de que habiendo sido apelada la sentencia totalmente y habiendo sido el al-

cance y eficacia de la prueba en cuanto al contrato celebrado entre Strube y Boneta ampliamente discutida por los abogados de las partes, podemos y debemos considerar en sus méritos la reclamación que fué reconocida por la sentencia apelada. Además, dada la opinión que del caso hemos formado, la cuestión carece de importancia práctica porque por diversos caminos llegaremos al mismo resultado, a saber: la confirmación de la sentencia apelada.

Opinamos con la corte sentenciadora que las pruebas demuestran la existencia de un contrato perfecto celebrado entre Tomás Boneta y Strube, ya que hubo consentimiento, objeto cierto y causa. Según el artículo 1353 del Código Civil Revisado, "La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado." Aquí se entregó la cosa y no el precio. Tal circunstancia, la falta de entrega del precio, como se ha visto, no impide llegar a la conclusión de que el contrato quedó perfeccionado.

"La sucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos." (Artículo 664–a del Código Civil Revisado). En tal virtud la sucesión está obligada en este caso a cumplir el contrato que celebró su causante y fué debidamente condenada a ello por la corte de distrito.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociado Hutchison.

El Juez Asociado Sr. Aldrey firmó conforme con la sentencia.

El Juez Asociado Sr. Wolf firmó conforme con la sentencia en cuanto declara sin lugar la demanda y disiente en cuanto a declarar con lugar la demanda de intervención.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

Estoy de acuerdo con aquella parte de la mayoría de la opinión del tribunal por virtud de la cual se desestima la demanda de Luis C. Boneta. Aunque fué presentado como prueba un escrito que se alegó era un contrato de venta, creo que la corte inferior estuvo justificada al creer que el precio de dicha venta nunca fué satisfecho. Esta deducción era posible que se hiciera, dada la actitud y conducta de Luis C. Boneta, y su extraña indiferencia hacia la propiedad, tanto antes como después del descubrimiento de la supuesta escritura. Fué solamente después de este descubrimiento que él fué diligente y sus manifestaciones así como las de otros supuestos testigos relativas al pago del precio ciertamente no fueron satisfactorias para la corte inferior y no veo razón alguna para ir contra la conclusión general de la corte en cuanto al particular. Strube también prestó declaración que la corte tenía derecho a creer, en el sentido de que el mismo Boneta se manifestó a favor de dejar que Strube tuviera la propiedad y de que Boneta nunca la reclamó.

Por otra parte, el supuesto contrato de Strube se basa en los hechos siguientes que más bien son informales, a saber:

En el año 1907 Leopoldo Strube era dueño de la finca "Jobo". Hacia esa fecha constituyó hipoteca a favor de Tomás Boneta por la suma de cinco mil pesos, con intereses al tipo de 1 por ciento mensual, o sean $600 al año. Leopoldo Strube tenía entonces muchas deudas y uno de sus acreedores era su tía Erica Schroder, quien hacia el mes de diciembre de 1908 obtuvo orden de embargo contra él en la Corte Federal por la suma de $43,000, encontrándose la finca "Jobo" entre los bienes embargados. Swift & Co. también obtuvo orden de embargo contra la misma propiedad por la suma de $2,500. En 31 de diciembre de 1908 Strube y Erica Schroder celebraron un contrato por virtud del cual Strube traspasaba a su referida tía determinadas propiedades incluyendo la finca "Jobo". De este modo quedó Strube re-

levado de todas las deudas que tenía con su tía Erica Schroder.    De los autos no aparece con mucha claridad la fecha precisa en que Strube cesó en la posesión de la propiedad "Jobo" pero él estaba fuera de dicha posesión en diciembre de 1909.    Hacia esta última fecha Tomás Boneta y Strube tuvieron conversaciones respecto a la propiedad "Jobo". Strube puede decirse es un testigo veraz y la corte inferior ciertamente dió crédito a su declaración, no teniendo motivo para dudar mucho de su declaración, pero algunas de sus consideraciones respecto a la situación entre él y Boneta están sujetas a duda.    Declaró Strube que Tomás Boneta ejecutó su hipoteca contra la propiedad "Jobo" por estar la hipoteca vencida con exceso; que antes de la ejecución y después del traspaso de dicha propiedad a Erica Schroder, Tomás Boneta mandó a buscar a Strube, a quien dijo que no deseaba seguir entendiéndose con Erica Schroder ni con su abogado, el Sr. Paine, sino que él ejecutaría la propiedad, pues deseaba obtener su dinero y que si Strube quería volver a obtener la posesión de la propiedad, él, Boneta, ejecutaría la hipoteca y vendería la propiedad a Strube, siempre que este último pagara todas las costas que originara la ejecución.    Y en otras partes de su declaración manifiesta Strube que el convenio entre ellos era de que Strube pagaría $5,000 y todas las costas y gastos que le originara la ejecución a Boneta.

Resulta perfectamente claro a mi juicio de toda la prueba que Boneta deseaba vender a Strube, pero que solamente quería vender si éste lo eximía del pago de todas las costas que ocasionara la ejecución de la hipoteca.    En otras palabras: Boneta quería que su hipoteca por $5,000 quedara libre de cualquier gravamen y no deseaba retener la propiedad. Strube declaró que esta proposición de Boneta vino a ser un contrato entre ellos.    De conformidad con lo anterior, a principios del año 1910 se inició un procedimiento en ejecución de hipoteca y como en él fué Boneta el mejor postor le fué adjudicada la finca por la suma de $6,125.    Casi inmediata-

mente después de la venta de la finca "Jobo" a Boneta entró Strube en posesión de dicha finca a nombre de Boneta. En el juicio fueron presentados los libros de Boneta, donde existe una cuenta de Boneta y Strube donde el primero anotaba los pagos de intereses satisfechos por Strube. Boneta continuó con esta cuenta después de la venta en ejecución y los pagos de intereses se anotaban como satisfechos cada seis meses más o menos sin hacerse cambio alguno en la cuenta por virtud de la venta.

En marzo 29 de 1910, fecha de la venta en ejecución a Boneta, aparece un asiento en los libros por $800 que, según expresa Strube, se refería a un pago parcial de las costas del procedimiento hipotecario. Strube, sin embargo, tomó un vale por esta suma de $800, y de la faz de dicho vale no hay nada que demuestre que era un recibo. Strube admitió que lo había tomado en esta forma para el caso de que no se otorgara una escritura de la propiedad, pudiera él tener algo a su favor. En julio 18 de 1910, Boneta dió a Strube un segundo vale con condiciones y reservas del mismo tenor. Hacia esa fecha Strube y Boneta se reunieron en la oficina del notario Paz, con el expreso propósito de otorgar escritura de la propiedad "Jobo"; pero aunque Strube alegó que había arreglado sus cuentas con su tía, compareció sin embargo a esta reunión el señor Koester quien ofreció comprar la propiedad a nombre de Augusto Strube, hermano de Leopoldo. Al dar lectura el notario a la minuta de dicha escritura, el señor Koester se negó a entrar en negociaciones con motivo de que los dos embargos de Erica Schroder y Swift & Co. no habían sido cancelados en el registro de la propiedad, las partes, por tanto, se marcharon y nada se hizo entonces por perfeccionar el alegado contrato entre Strube y Boneta.

Repreguntado Strube manifestó que el dinero pertenecía a su hermano y a no ser porque este dinero había de enviarlo su hermano, él no hubiera podido concertar dicho con-

trato con Boneta. Sin embargo, tan pronto como la fecha de
este contrato fracasado, como lo titula Strube, pasó a la his-
toria el señor Koester entregó a Strube los $5,000, quien los
dedicó a otros fines. No resulta enteramente claro de los au-
tos por qué Strube no se quedó con la propiedad en esta fe-
cha sujeta como estaba, según él, a dos embargos anotados
en el registro de la propiedad que no perjudicaban. Sin em-
bargo, Strube y Boneta fueron juntos a ver al abogado Mar-
tín Travieso, habiendo manifestado Strube que el señor Tra-
vieso estaba contratado para cancelar estos dos embargos.
La memoria del señor Travieso era, al parecer, un poco de-
fectuosa, pues él declaró que había sido contratado para de-
fender un pleito de Erica Schroder contra Tomás Boneta.
Este pleito a la verdad siguió inmediatamente e interrumpió
los procedimientos. La acción que se establecía era contra
Tomás Boneta para anular la venta en ejecución alegándose
varios derechos de Erica Schroder. Travieso declaró que
todo el convenio que hizo con Boneta era para recibir la suma
de $600 por defender ese pleito y que Strube le pagó $150 a
cuenta. Strube dijo que los $150 fueron solamente para le-
vantar los embargos y las fechas al parecer confirman su
manifestación. Posteriormente y hasta el año 1913, cuando
la acción establecida por Erica Schroder fué desestimada,
Travieso hizo varias tentativas por cobrar de Strube el saldo
de $450, pero Strube negó su responsabilidad y le dijo que
se dirigiera a la sucesión de Boneta. En la correspondencia
habida entre ellos aparece, sin embargo, que Strube también
hizo ofertas de pagar a Travieso, sugiriendo que él rebajara
sus honorarios por las manifestaciones hechas por Strube de
que si bien él no era directamente responsable, sin embargo,
como la propiedad podía pasar a él, él podría quedar igual-
mente obligado al pago. No encuentro en los autos que la
cuenta de Travieso fuera satisfecha.

En 23 de noviembre de 1912, Tomás Boneta falleció sin
otorgar testamento. Todos los herederos prontamente ini-

ciaron una declaratoria de herederos, la propiedad quedó inventariada, estando entre dichos bienes inventariados la finca denominada "Jobo".

Leopoldo Strube se basaba en un supuesto contrato de venta que había de cumplirse y ofreció pagar un precio que se alegó había sido convenido o el saldo del precio convenido, para obtener el cumplimiento específico del supuesto contrato por los herederos de Tomás Boneta. El apelante muy bien llama la atención hacia el hecho de que la relación legal entre Tomás Boneta y Strube era de una promesa de venta en caso de que ciertas cosas que entonces no existían llegaran a realizarse. En la fecha del supuesto contrato, Boneta no era dueño de la propiedad y no podía vender a Strube una finca que estaba a nombre de Erica Schroder, de modo que en la fecha de dicho contrato no podía cumplirse con los términos del mismo. Strube meramente convenía que en cierta fecha recuperaría la propiedad de Boneta si este último en realidad de verdad ejecutaba la propiedad y la compraba para sí. Boneta ejecutó y compró la propiedad e inmediatamente puso en posesión a Strube. A pesar del hecho que Strube no menciona, creo que él estaba tan ansioso de recobrar la posesión de la propiedad y cultivar su cosecha de tabaco como lo estaba Boneta de recibir su dinero en vez de la hipoteca, lo mismo dejando a Strube que pagara los intereses o que fuera otra la persona que los pagara. Strube entró en posesión de la propiedad, es verdad, pero su pago de $50 mensuales o aun el pago de las contribuciones no eran sino una justa compensación por el uso y ocupación de la finca.

No aparece en ninguna parte que Strube en la fecha del alegado contrato celebrado entre él y Boneta, en el tiempo que media entre el otoño de 1909 y la primavera de 1910 pagara alguna cantidad a Boneta, o sufriera algún perjuicio. Por el contrario, creo que estaba muy ansioso porque se le pusiera en posesión de la propiedad "Jobo". También in-

dica el apelante que si hubo algún contrato entre Strube y Boneta, este último hizo todo lo que dicho contrato le exigía por cumplir con el mismo y que el supuesto contrato fracasó. En realidad de verdad, Boneta fué a la oficina de Paz Urdaz preparado para otorgar cualquier clase de escritura que Strube quisiera, pero este último no compareció personalmente, sino por su mandatario señor Koester, que tenía $5,000 pertenecientes al hermano de Strube y quien estaba preparado para otorgar una escritura por $5,000. El notario hizo presente que los embargos de Erica Schroder y de Swift & Co. aparecían en el registro de la propiedad como gravámenes y el señor Koester se negó a firmar.

Creo que cualquiera que hubiera sido el entendimiento habido entre Boneta y Strube, Boneta ofreció cumplir con todo aquello que le correspondía. Cualquier cosa que hubiera podido hacer después era puramente por condescendencia. En realidad de verdad, tanto Strube como Boneta fueron a la oficina de Travieso donde dice Strube contrataron ellos a dicho abogado para que levantara los embargos. Estos, sin embargo, existían todavía en el año 1915, o sea en la fecha del juicio. En la fecha del juicio, en tanto se hace referencia a estos embargos, nada había sucedido para que Strube quedara en mejores condiciones para comprar la propiedad que las que tenía cuando el señor Koester se negó a firmar. Casi inmediatamente después Koester entregó los $5,000 a Strube, quien declaró que los había empleado para otros fines. Creo que Boneta tenía razón para tomar la negativa de Koester a firmar en el sentido de que lo relevaba de cualquier obligación que pudiera tener para con Strube, si alguna existía. Aunque la corte al parecer no les dió crédito, dos o tres testigos declararon que Boneta manifestó en la oficina de Paz Urdaz el día del contrato fracasado que las negociaciones habían terminado. Los embargos contra la propiedad imponían tanta obligación a Strube como a Boneta y no consti-

tuían obstáculo alguno para el traspaso de la propiedad de Boneta a Strube.

En 1910, él tuvo verdadera oportunidad de comprar la propiedad "Jobo", lo que no hizo, y desde esa fecha en adelante no hizo más oferta por comprar la propiedad hasta el comienzo de esta acción. Esta omisión de actuar también guarda alguna relación.

Se me ha llamado la atención hacia el artículo 1095 del Código Civil, pero mi opinión es que es aplicable más particularmente a una deuda específica, o a una persona que insiste en el cumplimiento de un contrato y no a la que se opone al cumplimiento.

Se hace cierto hincapié en el hecho del pago de $1,600 hecho por Strube a Boneta en abril y julio de 1910, pero no eran absolutamente pagos sin condiciones hechas por Strube; él recibió documentos negociables a cambio. No aparece de los autos que Strube hubiera hecho pagos de intereses a Boneta después de esa fecha, de modo que por el transcurso del tiempo y dada la práctica de Boneta de aplazar los cobros, estos pagos podían ser considerados por Boneta como pagos a cuenta de los intereses o rentas por el uso y la ocupación de la finca. De igual modo podía entenderse cualquier pago de contribuciones cuya obligación no se menciona en los autos. Cualquier pago de contribuciones hecho por Strube, hasta podía considerarse como voluntario y que no era parte del convenio entre él y Boneta, o en verdad, como hemos dicho, como parte del precio por el uso y la ocupación. Strube declaró que él recibió estos vales en esta forma, para el caso de que no se otorgara ninguna escritura, y que Boneta o la sucesión eran, por tanto, sus deudores. Creo que aparece claro de los autos que Strube creyó que estaba libre para hacer lo que quisiera en cuanto a la compra de la propiedad. En realidad y según aparece de su declaración, él confiaba en la palabra de Tomás Boneta, quien también se creyó libre

para hacer lo que quisiera y quien tenía en el año 1911 perfecto derecho para traspasar la propiedad a su hijo si ésta era su voluntad.  En este alegado contrato celebrado entre Strube y Boneta existiría cierta falta de mutualidad si Strube tenía razón.  Nadie podía obligarle a tomar la propiedad, pero él podía obligar a Boneta o a sus herederos.

El artículo 1067 dispone que en las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe.  No creo que hubo ningún cumplimiento por Strube hasta la fecha del pleito.

El artículo 1071 prescribe que cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia.  No puedo ver que Strube tomara medida alguna para exigir el cumplimiento específico del contrato que alegó existía.  El tuvo oportunidad de comprar y su mandatario el Sr. Koester se negó a ello.  Los embargos sobre la propiedad existen todavía.  Todavía después de la muerte de Boneta no trató en manera alguna de insistir en el cumplimiento específico, ni tampoco hizo ninguna otra diligencia para levantar los embargos.  El pleito de Erica Schroder fué desestimado hacia la fecha de la muerte de Boneta.  La desestimación de esta acción y la muerte de Boneta fueron, al parecer, las cosas que impulsaron a los dos reclamantes para tratar de recobrar la propiedad.  Tomás Boneta ha fallecido.  Durante su vida hubiera hecho lo que quería, pues era un hombre de energía y perito en negocios.  Después que un hombre ha muerto las cortes van despacio al dar efecto a cualquier supuesto convenio celebrado por el finado, a falta de cualquier indicación de que tal fué su intención.