CAYUGA LINEN & COTTON MILLS, INC., demandante y apelante, *v.* CRÉDITO Y AHORRO PONCEÑO, demandado y apelado.

No. 4706.—*Sometido:* Junio 27, 1929. *Resuelto:* Julio 29, 1930.

*Besosa & Besosa,* abogados de la apelante; *M. Marcos Morales,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Convenimos con la corte inferior en que los hechos y conclusiones que deben derivarse en este caso son más o menos como sigue: La Cayuga Linen & Cotton Mills, Inc., una corporación del estado de Nueva York con oficina principal en la ciudad de Albany, Nueva York, presentó demanda ante la Corte de Distrito de San Juan para recobrar la suma de $1,609.86 e intereses. La demanda fué radicada contra el Crédito y Ahorro Ponceño, que es una corporación de Puerto Rico con oficina principal en la ciudad de Ponce, y por ese motivo el caso fué trasladado a esta última ciudad. En la demanda se alegaba que en 7 de febrero de 1924 las partes celebraron un contrato a virtud del cual la demandante vendió a la demandada veinte cajas de 150 lbs. cada una, de hilo para enfardar tabaco, al precio de 38 centavos, libre al costado del vapor, para embarcar durante la última quincena de noviembre; que la demandante embarcó la citada mercancía de acuerdo con el contrato de compra venta, y giró contra la demandada por $1,609.86, con flete hasta San Juan, y seguro; que el giro no fué aceptado no obstante haber recibido y aceptado la demandada la mercancía, e igualmente, no obstante los requerimientos al efecto, la demandada no ha pagado dicha suma en todo o en parte.

La demandada formuló algunas negaciones, y la contienda quedó trabada el 16 de septiembre de 1927, y luego, después de varias mociones por parte de la demandante, el caso fué

señalado para enero 27, 1928. Entonces la corte relata la prueba que fué sometida por las partes y llega a la conclusión de que se probaron los siguientes hechos: Que la Cayuga Linen & Cotton Mills Co., Inc., de Nueva York, vendió al Crédito y Ahorro Ponceño, de Cayey, Puerto Rico, por medio de la firma de Fernández & Pérez, de San Juan, Puerto Rico, veinte cajas de hilo para enfardar tabaco, etc.; que la mercadería objeto de la venta fué embarcada por el puerto de Baltimore, estado de Maryland E. U. A., consignada a la demandada al puerto de San Juan de Puerto Rico, y que esta mercancía, al abrirse en Puerto Rico y examinarse por la demandada, resultó estar averiada por haberse mojado completamente con agua y resultar inservible. Es un hecho admitido por las partes que Fernández & Pérez eran los agentes y representantes de la demandante en Puerto Rico, y que la mercancía resultó averiada por agua; que no hubo controversia respecto a estos hechos, pero que sí la hubo con referencia a quien debía sufrir la pérdida; alegando cada parte que la otra debía sufrirla; que en apoyo de su tesis la demandante sostuvo que la mercancía fué vendida libre al costado del vapor en Baltimore, Maryland, y que esto constituía una entrega formal a la demandada; que todos los riesgos y perjuicios que sufriera la mercancía desde ese momento hasta su llegada a Puerto Rico tenían que ser sufridos por la demandada; y que la demandada sostuvo que la entrega había de hacerse en Puerto Rico en el mes de noviembre de 1925, que la mercancía no llegó hasta enero de 1926, y que cualquier daño que se ocasionara al pedido hasta su entrega a la demandada debía sufrirlo la demandante, y, además, que no hubo entrega formal y que, de haberla, la mercancía le fué devuelta a la demandante.

La corte entonces procedió a discutir las abreviaturas f. a. s. y f. o. b., y citó autoridades para sostener que significan que "el precio se cargará al tiempo de tal entrega." La corte dijo que no había duda alguna de que las iniciales f. a. s. (en este caso, libre al costado del vapor) se usaban

en conexión con el precio de la mercancía, y no para indicar el sitio de la entrega. Necesariamente, la corte y las partes interesadas en el caso convinieron en que si el contrato tenía por mira una entrega formal al costado del vapor, la demandada sería responsable. La corte resolvió que no hubo convenio especial en ese sentido, y, por tanto, que la condición hubiera tenido que determinarse de la prueba. La corte demostró que el contrato estipulaba que la mercancía debía ser embarcada al Crédito y Ahorro Ponceño de Cayey, Puerto Rico, consignada al puerto de San Juan, Puerto Rico, y que hasta que la demandante entregara la misma en el puerto de Puerto Rico no había entrega formal y el título permanecía en la demandante, y citando de 24 R.C.L. 47, la corte usa las palabras en inglés "The risk follows the title."

Sin embargo, que la demandante no entregó la mercancía en el puerto de Nueva York, según parecía indicar el contrato, sino que la entregó en el de Baltimore, es otra conclusión a que llegó la corte, a virtud de la cual la demandante no podía sostener que el título había pasado a la demandada con motivo de la entrega al costado del vapor. La corte resolvió, además, que la intención de las partes de que la demandante retuviera el título hasta que la mercancía fuera entregada en Puerto Rico quedó evidenciada por el otorgamiento de un conocimiento de embarque y de un giro enviado al National City Bank of New York; que cuando la parte demandante tiene la intención de hacer entrega del título, ordinariamente no envía un conocimiento de embarque, sino que retiene el título de la mercancía hasta que se efectúa la entrega formal. La corte continuó diciendo que no podía mantenerse que la demandada recibió y aceptó la mercancía, porque la prueba demostraba que los agentes generales de la demandante la retuvieron sin obtener el conocimiento de embarque o la factura, y toda vez que la demandada tenía derecho a examinar la mercancía y a negarse a aceptarla si no se hallaba en estado servible, y que no sólo no hubo entrega formal a la demandada, sino que el contrato nunca

quedó perfeccionado, ya que antes de la entrega formal, en el proceso de examinar la mercancía, al notarse por la demandada que el agua la había hecho inservible, y al llamar la atención de la demandante, ésta, por sus agentes generales en Puerto Rico, Fernández & Pérez, ordenó a la demandada que devolviera la mercancía al muelle No. 5, de San Juan, Puerto Rico. La corte entonces entró en ulteriores consideraciones al efecto de que Fernández & Pérez eran los agentes generales de la Cayuga Linen & Cotton Mills, Inc., y de que, aun si el título hubiera pasado al comprador, habría revertido al vendedor por la devolución de la mercancía y su aceptación por el vendedor.

Como conclusión final la corte dijo que la demandada no venía obligada a aceptar la mercancía, toda vez que el contrato exigía la entrega en noviembre, y ésta no fué hecha hasta enero de 1926.

La apelante señaló varios errores por haber dejado la Corte de Distrito de Ponce de posponer el juicio, y entonces procedió a señalar otros errores al efecto de que la sentencia es contraria a la prueba. Se nos ocurre que sería algo mejor si la apelante, al atacar la sentencia en su totalidad por no estar de acuerdo con la prueba, hiciera una especificación mayor. Por ejemplo, que la prueba tendió a demostrar que la demandada aceptó la mercancía y que cualquiera pretendida devolución de la misma fué hecha a sus propios agentes, pues el Crédito y Ahorro Ponceño constituyó a Fernández & Pérez en sus propios agentes para que se hicieran cargo de la mercancía.

La apelante alega que no hubo prueba de que Fernández & Pérez fueran los agentes de la demandante, pero el mismo Sr. Fernández ocupó la silla testifical y prestó declaración tendente a demostrar que él era tal agente general.

Ahora bien, aunque existe un principio general de derecho, de que las declaraciones de un agente no son admisibles para probar la agencia, es aplicable solamente a las declaraciones hechas fuera de la corte cuando son citadas por

otra persona, y un agente es de todo punto competente para declarar respecto a su agencia, aunque el peso de su declaración es una cuestión distinta, especialmente con respecto al límite de la agencia. Que un agente puede declararlo así es una conclusión que puede derivarse de las siguientes autoridades: *Bender et al.* v. *Ragan et al.*, 102 Pac. 427; *Yoslyn* v. *Cadillac Automobile Co.*, 177 Fed. 863; 2 C. J. 933, donde se dice:

"La regla de que las manifestaciones de un agente son, en lo que a su principal concierne, inadmisibles para probar el hecho de la agencia, no es aplicable a su declaración como testigo en un juicio en que tal hecho está en controversia."

Quizás en algunas de nuestras opiniones no hayamos hecho esta distinción tan cuidadosamente como debió hacerse, porque hasta ahora la cuestión no había estado directamente envuelta. Por ejemplo, en el caso de *Orange Rice Milling Co., demandante y apelada,* v. *Angel Barasorda, demandado y apelante, fallado el 31 de enero, 1930,* dijimos:

"Fuera del principio general de que una agencia no debe establecerse por la sola declaración del agente, los autos en su totalidad no demuestran que existiera esa agencia."

Ese caso, sin embargo, no giró sobre el hecho de la agencia, sino sobre el alcance de la misma, y lo dicho, en cuanto era aplicable a la declaración del agente en el mismo, fué un mero *obiter dictum.*

En el presente caso, no sólo la declaración del Sr. Fernández, que fué el testigo principal del caso, sino toda la prueba, tendieron a demostrar que Fernández & Pérez eran tales agentes generales de la demandante, y que todas sus gestiones fueron realizadas en beneficio de la dicha demandante. Es cierto que antes de que los efectos entregados les fueran devueltos a ellos, la demandada, por mediación de su agente, les escribió una carta pidiéndoles que se hicieran cargo de la mercancía. Pero la lectura de la prueba nos convence de que mediante esta carta la demandada no hizo a

Fernández & Pérez sus propios agentes, sino que Fernández & Pérez, quienes vendieron originalmente los efectos, se hicieron cargo de la mercancía a nombre de la demandante; y también llegamos a la conclusión de que ellos tenían autoridad para hacerlo así.

No tenemos duda alguna de que las palabras f. a. s. y f. o. b., (o en este caso, libre al costado del vapor) al ser usadas en relación con el precio, como en este caso, no sirven para transferir el título. De haber cualquier duda, aún estaríamos inclinados a resolver que el comprador debe tener alguna intervención en la designación del porteador que debe servirle de agente, y el porteador en este caso, según fué nombrado por las partes, debía ser del puerto de Nueva York, y no del de Baltimore. Las propias autoridades citadas por la apelante tienden a probar estas conclusiones, por lo menos en gran parte.

No tenemos duda de que la intención de no transferir el título quedó revelada por el envío del giro y del conocimiento de embarque al National City Bank. Tampoco tenemos duda en absoluto de que la mercancía llegó averiada, y de que la demandada tenía el derecho de negarse a recibirla. Igualmente, convenimos con la corte en que la mercancía fué devuelta a instancias y con pleno consentimiento de Fernández & Pérez, agentes de la demandante. Tal vez no debiéramos hacer mucho hincapié en el hecho de que la demandante dejara de entregar los efectos en noviembre, pero estamos contestes con la apelada en que el contrato requería tal entrega.

Otro señalamiento de error se dirige al hecho de que hubo alguna prueba tendente a demostrar que la demandada retuvo parte de la mercancía. A este respecto, la prueba también demostró que la demandada se negó a aceptar la entrega, y conforme indica la apelada, no hubo prueba satisfactoria de la cantidad de la mercancía no averiada que en efecto se retuvo, o del precio de la misma, o de la cantidad contenida en las dos cajas que se suponían haber sido rete-

nidas por la demandada. La apelante no nos coloca en situación de poder determinar la cantidad, si es que la demandada es responsable de ella.

■ El primer señalamiento de error dice que la Corte de Distrito de Ponce abusó de su discreción al no conceder la suspensión del señalamiento del juicio de este caso que hizo *motu proprio,* y al negarse a dar tiempo suficiente a la demandante para conseguir las declaraciones de testigos esenciales no residentes en Puerto Rico, por medio de deposiciones. No prestaremos mucha atención a este señalamiento, ya que estamos enteramente satisfechos de que la demandante dejó de demostrar la importancia de estas declaraciones, y, más especialmente, porque no vemos que las deposiciones propuestas pudieran haber alterado el resultado del caso. Formalmente, no creemos que la apelante pueda quejarse del ejercicio de la discreción de la corte al negarse a suspender la vista del caso, cuando el mismo había estado en controversia por varios meses. Podríamos exonerar a los letrados de toda responsabilidad por haber dejado de obtener antes las deposiciones, porque los autos revelan que' hicieron todo esfuerzo por conseguirlas. Bien con respecto a este señalamiento de error, o con referencia a uno similar, la apelante se queja de que en realidad la corte había convenido en suspender el caso y luego cambió de idea sin notificar a la apelante con cinco días de anticipación, o algo relativo a la falta de una notificación con cinco días de anterioridad. Hemos buscado en los autos la comprobación de este extremo, y no la hallamos, y nuestro recuerdo es que la apelante no indicó las páginas de los autos en que podía encontrarse.

Tampoco hallamos que la corte cometiera error al negarse a suspender el juicio para obtener la declaración de otro testigo que se encontraba entonces en los Baños de Coamo. Simplemente podemos decir que la demandante no nos convence de que la corte mal usara su discreción al negarse a suspender el caso a mediados del juicio.

Tal vez no hayamos tratado algunos de los puntos sus-

citados por la apelante, pero la lectura que hemos hecho de los autos y de los alegatos nos convence de que de todos modos la sentencia tendría que ser confirmada.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Texidor no intervino.