JOSEFINA PRIETO, demandante y recurrente, *v.* HULL DOBBS COMPANY OF PUERTO RICO, demandada y recurrida.

*Número:* AP-62-39      *Resuelto:* 17 de mayo de 1963

---

*Carmelo Avila Medina,* abogado de la recurrente; *B. Sánchez Castaño, R. Rivero Cervera, Carlos R. Vélez* y *Ana R. Rodríguez Olazagasti,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El día 3 de agosto de 1955 la recurrente, Josefina Prieto, acudió al sitio de negocios de la recurrida en la Parada 23 de Santurce, en el automóvil Ford, tablilla P-46-985 que dedicaba al negocio de taxi, junto con un mecánico y con el conductor de dicho taxi, Sr. Angel Colón, con el objeto de cambiar dicho vehículo por otro. La atendió el vendedor de la recurrida, señor Mora. La recurrente escogió un automóvil usado de los que allí se ofrecían en venta, lo hizo probar por su mecánico y, a la vez, Mora, que aunque era mecánico su deber no era examinar los vehículos (T.E. pág. 46), probó el que ella le llevó. Mora declaró que los vendedores hacen la proposición en relación con la venta de automóviles, pero que los documentos no son aceptados hasta que los firma el *mana-*

*ger* (T.E. pág. 45) ; que ". . . pero después del vendedor haber hecho el negocio, el manager (en este caso el señor Joaquín García) dice: 'Déjeme ver los papeles'. Entonces él va abajo a ver el carro si realmente tiene ese valor. Si él cree que tiene el valor dice: 'Está bien' ". (T.E. pág. 53). Se convino en el precio de $2,300 por el vehículo de la recurrida y a fines de pagarlo se valoró el de la recurrente en $1,500 y se le exigió $100 de contado que ella pagó. Se llenó parcialmente una orden de compra (Exhibit 1 de la recurrida) y la firmó la señora Prieto, pero ésta no fue firmada por persona alguna a nombre de la recurrida ni aparece aceptada por ninguna compañía de financiamiento; estos dos requisitos aparecen impresos en inglés en la referida orden. Declaró la recurrente que por sugestión de su mecánico habló con el administrador del sitio de negocios de la recurrida, el señor Joaquín García, y logró que éste le aumentase el precio en que le tomaban su automóvil, de manera que ella aparecía dando de pronto $1,700. Entonces firmó unos cuatro o cinco papeles de los cuales no le entregaron copia. Luego se cambiaron las tablillas de un vehículo al otro y la recurrente se llevó ambos, le hizo cambiar el metro y el biombo del que ella creía haber vendido al otro que creía haber adquirido y a éste le pintaron en una de las puertas delanteras "Prieto Taxi" y atrás en el baúl le pintaron el número del taxi.

Al otro día regresó la señora Prieto con ambos automóviles al negocio de la recurrida con el fin de recoger a un empleado de ésta que le habían ofrecido para acompañarla a la Comisión de Servicio Público con el fin de cambiar la tablilla. En esta ocasión, García le requirió que le entregase la llave del carro objeto del negocio, cosa que ella hizo y al inquirir la razón de esto, García le informó que no había negocio. Según Mora, el negocio lo aprobaron el día tres de agosto de 1954 (T.E. pág. 45), pero al día siguiente cuando la recurrente regresó, García llamó a un mecánico para que examinase el vehículo que aquella "había entregado", que éste

dijo que tenía las bielas fundidas; que García lo probó y dijo a la recurrente "que ese carro tenía las bielas fundidas y que no había negocio." (T.E. pág. 47). García ordenó se cambiase otra vez el biombo y el metro de un vehículo al otro. Con motivo de esto surgió una discusión acalorada entre García y la recurrente, señora Prieto. Ésta se retiró del lugar donde permanecieron los dos automóviles. Como a la semana después (T.E. pág. 30), un empleado de la recurrida llevó el vehículo que originalmente poseía la recurrente hasta el frente de la residencia de ésta y lo dejó allí. Dejó el *switch* con un vecino para que se lo diera a la recurrente.

, La señora Prieto declaró que la orden de compra original no servía, pues al hacerse el reajuste con García "hicimos papeles nuevos" que éste retuvo (T.E. pág. 36). Respecto a la copia de la orden original declaró que ". . . Ese estaba en el zafacón y lo saqué y me puse a garabatearlo" (T.E. pág. 37). La referida copia admitida como evidencia de la recurrida no aparece "garabateada". No le devolvieron los $100 que pagó. No volvió a usar el automóvil que le devolvieron pero allá para el 20 del mes de diciembre siguiente "puso" a trabajar el permiso "de taxi" presumiblemente con otro vehículo. (T.E. pág. 32.) Ante estos hechos, la recurrente demandó a la recurrida por incumplimiento de contrato y daños y perjuicios.

El tribunal de instancia concluyó que el negocio en cuestión se basaba en la orden de compra admitida en evidencia excepto que se varió el precio de manera que en vez de acreditársele $1,500 por el vehículo viejo se le acreditaron $1,600 más $100 que pagó de contado; que no se cumplió con los requisitos expresados en dicha orden de que fuese firmada por la recurrida y aprobada con una compañía de financiamiento; que la obligación surge cuando se cumple la referida condición suspensiva y si no se cumple "el vínculo de derecho no llega a aparecer"; que aun presumiendo que los vendedores estuviesen facultados para obligar a la recurrida, no existió contrato alguno entre las partes, pues no se probó cómo y cuándo la

recurrente iba a pagar a la recurrida el balance entre $2,300 y $1,700 que aquélla quedó adeudando; y por último, que la recurrente tiene derecho a que le devuelvan los $100 que acompañó con la orden original. Dicho tribunal declaró sin lugar la demanda y condenó a la recurrente a pagar las costas más $500 de honorarios de abogado y a la recurrida a devolver la suma de $100 a la recurrente.

No conforme, apeló ante nos la recurrente en 10 de agosto de 1955 habiendo quedado el caso sometido a nuestra consideración en noviembre de 1962. Apunta la recurrente que el tribunal de instancia incurrió en dos errores, o sea: 1) al resolver que la eficacia y validez del contrato en cuestión dependía de que fuese firmado y aceptado por la recurrida, y por una compañía de finanzas en cuanto al balance diferido y 2) al concluir que "no existía contrato alguno entre las partes en este caso porque no existe prueba de cómo y cuándo la demandante le iba a pagar a la demandada el balance entre el precio de $2,300 y los $1,700."

A nuestro juicio la prueba demuestra que hubo acuerdo entre las partes en cuanto al objeto y precio del contrato y hubo entrega de la cosa. El hecho que la prueba no demuestre la forma y manera convenida de pagar la recurrente el balance insoluto del precio de $2,300, o sea, la suma de $600, no significa que dejó de concertarse el acuerdo de voluntades entre las partes, ya que es evidente de las circunstancias del caso y de la costumbre y usos en este tipo de negocios que dicha suma habría de saldarse por la recurrente a plazos, y en todo caso los tribunales pueden fijar el plazo. Código Civil, Art. 1081—31 L.P.R.A. sec. 3064; *Sánchez* v. *De Choudens*, 76 D.P.R. 1 (1954), cita precisa a la página 11; *Rivera* v. *Cardona*, 56 D.P.R. 819 (1940), cita precisa a la página 823; *Jiménez Vda. Cobián* v. *Ramos*, 51 D.P.R. 387 (1937); *Armstrong* v. *Jones*, 44 D.P.R. 762 (1933); *Seoane* v. *Cortés*, 40 D.P.R. 73 (1929); y *Nicorelli* v. *Ernesto López y Compañía*, 26 D.P.R. 55 (1917). El negocio

se inició sobre la base de la orden de compra antes mencionada excepto que dicha orden no se terminó de llenar y, como veremos más adelante, en efecto se descartó. En el proceso de reajustar el precio con el fin de reducir éste en $100, o sea acreditarle $1,600 en lugar de $1,500 por razón del vehículo viejo de la recurrente, García, con autoridad aparente y tenido para con el público por la recurrida como su agente para ello, cf. *Arias* v. *Torres,* 78 D.P.R. 187 (1955); *Castro* v. *Payco, Inc.,* 75 D.P.R. 63 (1953); *Fajardo* v. *Schlüter & Co. Sucr.,* 43 D.P.R. 276 (1932); *Cayuga* v. *Crédito y Ahorro Ponceño,* 41 D.P.R. 457 (1930); *Torres* v. *P.R. Racing Corporation,* 40 D.P.R. 441 (1930); *Fuentes* v. *Canetty,* 39 D.P.R. 173 (1929), concertó el contrato con respecto al negocio a que originalmente se refería dicha orden. Código Civil, Art. 1339—31 L.P.R.A. sec. 3746; *West India Oil Co. (P.R.)* v. *Sancho Bonet, Tes.,* 54 D.P.R. 732 (1939), cita precisa a la pág. 741; *Benítez Flores* v. *Llompart,* 50 D.P.R. 670 (1936), cita precisa a la página 678; *Boneta* v. *Boneta, et al., y Strube,* 27 D.P.R. 690 (1919); Scaevola, *Código Civil,* tomo XXIII, pág. 315.

▇▇▇ Dijimos previamente que el Exhibit 1 de la demandada que es la orden en cuestión, solamente suscrita por la recurrente, fue descartada por las partes. Esta conclusión se basa en las consideraciones a que nos referimos a continuación. La llamada Orden del Comprador es un formulario preparado por la recurrida y por lo tanto debe considerarse e interpretarse restrictivamente en cuanto a ésta. *Torres* v. *P.R. Racing Corporation,* supra. Es significativo que la parte del mismo que se refiere al vehículo de la recurrida que el cliente interesa comprar está impreso en inglés y en español, pero su última parte, que se refiere al vehículo que el cliente posee y desea transferir (*trade in*) a la recurrida para que su precio se abone al del vehículo anterior y que contiene la cláusula que dispone que la orden no es válida si no se firma y acepta por la recurrida y se acepta por una compañía de

financiamiento, está impreso *sólo* en inglés. En el caso ante nos los blancos en esta parte de la orden no aparecen llenados ni se llenó el espacio indicativo de la fecha de la orden. En otras palabras, tal parece que la recurrida quería asegurarse que el cliente tuviese un entendimiento indubitablemente claro con respecto a los términos de su compra del vehículo de la recurrida pero no así en cuanto a la última parte de la referida orden, especialmente cuando la prueba demuestra que los representantes de la recurrida indujeron a la recurrente a creer sin lugar a dudas que se había concertado un contrato de compraventa entre las partes. Cf. *Millán* v. *Caribe Motors*, 83 D.P.R. 494 (1961). La recurrente declaró que en su negociación subsiguiente y final con García se reajustó el precio y que firmó otros papeles de los cuales no le dieron copia. Este testimonio no fue refutado ni se presentó prueba por la recurrida que en forma alguna pusiera dicho testimonio en tela de juicio. Luego se le entregó el vehículo comprado a la recurrente y se le indicó que volviese al día siguiente para que un representante de la recurrida le acompañase a la Comisión de Servicio Público a cambiar las tablillas. A la luz de estas circunstancias, el acto de informar García a la recurrente al día siguiente de la referida negociación que "ese carro tenía las bielas fundidas y que no había negocio" en derecho constituyó, a nuestro juicio, un intento de desistir de un contrato concertado, por razón de vicio o defecto oculto (Arts. 1373, 1374 y 1375 del Código Civil —31 L.P.R.A. secs. 3841, 3842 y 3843), cuestión que subsiguientemente no se alegó como defensa en el caso ante nos, ni se ofreció prueba alguna demostrativa de la existencia de tal situación para sostener que la recurrida había desistido del contrato justificadamente.

En vista de lo expuesto es forzoso concluir que la recurrida incurrió en un incumplimiento de contrato, y que su actuación al defenderse en este pleito es de manifiesta temeridad.

La recurrente probó haber sufrido daños con motivo del referido incumplimiento de contrato consistentes en haber sido privada durante una semana del uso de su automóvil, lo que le producía un beneficio neto de $20 diarios. Sus daños, por lo tanto, ascienden a $140.

*Debe revocarse la sentencia y dictarse otra en su lugar condenando a la recurrida a pagar a la recurrente $140 por razón de tales daños, a devolverle a ésta los $100 pagados por la recurrente a la recurrida para abonar el precio de venta y no devueltos a la recurrente, más costas y $300 por concepto de honorarios de abogado.*