SINESIO DÍAZ ÁLVAREZ, demandante y recurrente, *v.* ELOÍSA ÁLVAREZ RODRÍGUEZ, Y OTROS, demandados y recurridos.

*Número:* R-67-326        *Resuelto:* 12 de diciembre de 1969

*Luis A. Archilla Laugier,* abogado del recurrente; *Carlos D. Vázquez, Héctor Reichard* y *G. Marrero Ledesma,* abogados de los recurridos.

PER CURIAM: Los planteamientos del recurrente se basan en un contrato de opción para la compra de grava de dos parcelas de una finca de las recurridas en el cual no se fijó plazo para el ejercicio de la opción. Ésta fue ejercitada unos cinco años desde la fecha de dicho contrato. Concluyó el tribunal de instancia, con razón a nuestro juicio, que tenía facultad para fijar el plazo dentro del cual debía ejercerse la opción. Determinó que dicho plazo eran tres años y al no ejercitarse la opción dentro de dicho plazo, la misma carecía de eficacia legal.

Las partes otorgaron dos contratos en 30 de agosto de 1959 mediante las escrituras números 50 y 51 ante el notario Mario A. Rodríguez Matías. Por la escritura núm. 50 la recurrida Eloísa Álvarez Rodríguez vendió al recurrente una finca de 27.33 cuerdas en Toa Alta por $10,932, de los cuales el recurrente pagó $3,000 en efectivo. Convino en pagar unas deudas de $2,800 y de $1,700 y suscribió un pagaré a favor de la vendedora por $3,432, pagadero en tres años en plazos anuales iguales, con interés al 6% anual. Por la escritura núm. 51 las recurridas otorgaron una opción al recurrente para la compra de grava de un gravero en otras propiedades de las recurridas, a razón de 10¢ el metro, durante cinco años contados "desde que empiece a consumir la grava." Mediante la escritura núm. 20, otorgada ante el notario Gustavo Marrero Ledesma, en 3 de noviembre de 1961, las recurridas arrendaron estas propiedades a Antonio Santos por un término de cinco años, mediante el pago de (1) un canon de $30 anuales por cuerda; (2) $20 por cuerda por los retoños de caña existentes; y (3) 15¢ por metro cuadrado en caso que "saque y utilice" grava de la propiedad para su beneficio.

La prueba testifical, resumida brevemente por el tribunal de instancia, se relaciona a continuación.

El recurrente testificó que compró la finca de 27.33 cuerdas a sus tías con el fin de ayudarlos a salir de una situación económica angustiosa y, además, por "la posibilidad en el

futuro que quizás yo podría explotar la grava que había en la finca para beneficiarme yo y beneficiarse ellas"; que el gravero quedaba fuera de la finca de 27.33 cuerdas en otras parcelas de las recurridas que en aquel momento, por diversas razones, no les convenía vender; que debido a esto fue que se suscribió la escritura núm. 51 sobre la referida opción; que enseguida comenzó sus gestiones para comenzar la explotación de la grava; que "En ese momento no se podía hacer nada, pero para el 1959 empezaron a mejorar la situación . . . lo primero que hice fue hacer gestiones en Obras Públicas para obtener un permiso . . . para poder entrar en los límites del gobierno"; que hizo el depósito de $1,500 que se exige en ese año; que hizo estudios sobre la maquinaria a instalarse; que tuvo que arreglar un camino hasta el lugar donde se iba a instalar la planta en la finca de 27.33 cuerdas; que se empezó a construir la planta en 1961 y estaba funcionando para el 1962; que luego de instalada envió al señor Cabrera a comunicar a las recurridas su intención de extraer grava bajo el contrato de opción pero éstas se negaron pues habían contratado con el Sr. Santos según la escritura núm. 20 antes mencionada; que entonces continuó la operación de extraer grava de su propia finca y "de la del gobierno . . . hasta principios de '65, allá finalizando el '64 ya no quedaba casi nada"; que la planta era de Cabrera; que el testigo suplía la grava por la que Cabrera le pagaba 20¢ metro el primer año y 25¢ el segundo, más $100 mensuales de arrendamiento.

Un Vicepresidente del Banco Federal Agrícola testificó que para el 1957 cuando se segregó la finca de 27.33 cuerdas para venderla al recurrente, ésta tenía un valor en el mercado de $7,000 según el tasador.

Se admitió en evidencia una certificación que acreditaba las sumas que recibió el demandante durante el tiempo que duró la explotación de la planta y el negocio de Cabrera para "sentar las bases de los daños."

Teresa Álvarez Rodríguez testificó que vendió al recurrente la finca de 27.33 cuerdas a $400 cuerda porque "bueno nosotros vendimos así, como él era el sobrino preferido de nosotros y teníamos deudas de los papás al morir y necesitábamos dinero y preferimos venderle a él, era el preferido, lo queríamos mucho, queríamos hacerle el favor de venderle la finca." Luego testificó que "Cuando ya estábamos en los trámites de la venta, nos dijo que le vendiéramos la grava, hicimos un contrato por diez años y mi hermana no quería, yo le dije que él me dijo iba a poner una planta enseguida en el '57. Yo le dija a mi hermana, cinco años pasan rápido, vamos a venderle a él, más por familia, por eso lo hicimos, pero no sabíamos que él no iba a poner la planta, él no la puso"; que "Dijo, sí, dentro de un mes empezaba a empezar, en el 1957 iba a empezar . . . unos meses . . . Yo iba donde él a preguntarle cuando iba a instalar la planta, pues nosotras, igualmente mi hermana no trabajamos, se nos terminó el dinero . . . él decía que la [planta de grava] iba a poner, hasta que un día me dijo que no iba a ponerla . . . después dijo que no encontró no la pudo poner, me dijo no iba a ponerla . . . yo le dije por allí hay un señor que quiere poner la planta, entonces nos dijo 'haz lo que quieran, no digan yo la voy a poner, ni digan del camino municipal, haz lo que quieran' me dijo, no digan que iba a ponerla y nosotros teníamos una mala situación, necesitábamos hacer algo, pues arrendamos la finca a Santos, compró la caña, le pagó a la Central."

Antonio Santos testificó que se enteró de la opción de compraventa del gravero entre el recurrente y las recurridas cuando fue notificado de la demanda en este caso; que no conocía ni había hablado con, ni había visto al recurrente hasta después de la demanda; que estableció su planta de grava en la finca de las recurridas para noviembre de 1962.

Aparece en evidencia una comunicación del recurrente a la recurrida Teresa Álvarez Rodríguez en 10 de julio de 1962 notificándole que tan pronto el gobierno haga un des-

linde para determinar lo que pertenece al gobierno y a personas particulares procederá, a través de David Cabrera, a extraer grava de su propiedad de acuerdo con la escritura núm. 51. En 23 de julio contestó el letrado Marrero Ledesma a dicha carta, en nombre de Eloísa Álvarez Rodríguez "que en vista de que usted no hizo nada para usufructuar el contrato y en vista de que ella tenía necesidad de que le produjera capital su finca, le arrendó a una tercer persona el sacado de grava, desde hace ya un sinnúmero de meses, y que usted lo sabía que eso ha sido así."

En vista de la situación así creada, el recurrente radicó demanda contra las recurridas y Santos, alegando la existencia del contrato de compraventa de grava entre el recurrente y las recurridas; que éstas rehúsan cumplirlo; que Santos se ha confabulado con ellas para violar dicho contrato; que el recurrente ha sufrido con tal motivo daños ascendentes a $60,000. Solicita se ordene el cumplimiento específico del contrato y el pago de los daños hasta entonces, o el pago de $60,000 por concepto de daños sufridos por el recurrente al no poder extraer grava de acuerdo con el referido contrato.

En su contestación negaron las recurridas ciertas alegaciones de la demanda; alegaron que el "contrato de opción a compra" fue rescindido; admitieron el requerimiento de 10 de julio de 1962; y como defensas especiales alegaron, entre otras, la nulidad del contrato de opción por falta de causa y porque su validez y cumplimiento ha sido dejado al arbitrio del demandante.

El tribunal de instancia concluyó que aunque por las escrituras núms. 50 y 51 se trataba de dos negocios, "en realidad eran una sola transacción, siendo la opción parte de la consideración del contrato de compraventa de la finca"; que no tuvo elementos factuales para determinar si el recurrente sufrió daños con motivo de no poder extraer grava de acuerdo con lo dispuesto en la escritura núm. 51. Concluyó que "la opción no falla legalmente por falta de causa o consi-

deración . . . . Por otro lado, el plazo para el ejercicio de la opción era de cinco años contados 'desde que empiece a consumir dicha grava.' Es claro que éste es uno de los casos en que el Tribunal no puede atenerse al sentido literal de los vocablos usados. Por ello, precisa que el Tribunal entienda que lo que se deseó decir fue que los cinco años para el pago de 10 centavos por metro de la grava empezaría cuando él empezara a extraer la grava de la finca. Puesto en otra forma, el deudor de esta obligación de pagar a 10 centavos por metro de grava cumpliría esa obligación, cuando él empezase a extraer la grava, pero no se fijó el plazo en que él tendría que proceder a extraer la grava.

"No habiendo plazo fijado, el Tribunal tiene poder legal para fijarlo. Desde este punto de vista, el Tribunal admite no tener un elemento factual claramente determinante. Empero, considerando el término de tres años para el pago de los $3,432.00 que se consideró como razonable por las partes de la finca comprada por el demandante a las demandadas, habida cuenta de que la opción y la compraventa se consideran como una sola transacción, este Tribunal determina que un término de tres años a partir del otorgamiento de la escritura de opción es un término razonable dentro del cual debió ejercitarse la misma. Además, considerando la dinámica económica tan pronunciada en nuestros tiempos, un tiempo mayor no sería a juicio del Tribunal razonable.

"Siendo ello así, habiéndose efectuado el arrendamiento de la finca por las demandadas el 3 de noviembre de 1961, ya había pasado el término de 3 años y por tanto, las demandadas no habían violado opción alguna porque razonablemente en ausencia de disposición contractual al efecto, a noviembre de 1961, la misma carecía ya de eficacia legal. Esta conclusión legal es independientemente de que también es inefectiva la opción porque su cumplimiento dependía exclusivamente del deudor y el tiempo era un elemento esencial para las demandadas."

Nos señala el recurrente cuatro apuntamientos. La consideración del primero hace innecesario considerar los subsiguientes.

Arguye el recurrente que el tribunal de instancia incidió al determinar que el plazo que tenía el recurrente para hacer valer su contrato de compraventa de grava era de tres años desde que fue suscrito en 30 de agosto de 1957; que el Art. 1081 del Código Civil (31 L.P.R.A. sec. 3064), (¹) no es de aplicación; que el principio a aplicarse es el establecido en el Art. 1340 (31 L.P.R.A. sec. 3747). (²)

También se dice que en este caso las recurrentes venían obligadas a haber recurrido al tribunal de instancia para que fijase el plazo dentro del cual debía ejercerse la referida opción y que al no hacerlo quedaba el recurrente facultado, bajo lo dispuesto en la escritura núm. 51, para ejercer su opción en cualquier momento.

El pacto de las partes con respecto a la extracción de grava de las fincas de las recurridas aparece de las cláusulas Cuarta y Quinta de la escritura núm. 51, las que leen así:

"CUARTO: Que los contratantes han convenido y al efecto celebran un contrato de opción de compra de la grava que se encuentra en las fincas de Doña Teresa Álvarez Rodríguez y Doña Eloísa Álvarez Rodríguez, anteriormente descritas comprometiéndose Don Sinesio Díaz Álvarez a pagar dicha grava a razón de diez centavos el metro.

---

(¹) El Art. 1081 provee que:

"Si la obligación no señalare plazo, pero de su naturaleza y circunstancias se dedujere que ha querido concederse al deudor, los tribunales fijarán la duración de aquél.

"También fijarán los tribunales la duración del plazo cuando éste haya quedado a voluntad del deudor."

(²) El Art. 1340 dispone que:

"La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato.

"Siempre que no pueda cumplirse la promesa de compra y venta, regirá para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el presente subtítulo."

"QUINTO: Que dicho contrato tendrá una vigencia de cinco años, contados estos desde el momento en que empiece a consumir dicha grava."

Es evidente que se trata de una opción. Los derechos provenientes de la misma se hacen efectivos durante cinco años a contarse desde que el recurrente "comience a consumir dicha grava." Castán, *Derecho Civil Español*, vol. 4, pág. 43; Puig Peña, *Compendio de Derecho Civil Español*, vol. 3, pág. 536.

En *Nicorelli* v. *Ernesto López & Compañía*, 26 D.P.R. 55, 62 (1917), dijimos que no era necesario el ejercicio de una acción previa limitada a la fijación del plazo de una obligación y que todo podía quedar definitivamente terminado dentro de un solo pleito y en una sola sentencia. En *Jiménez Vda. Cobián* v. *Ramos*, 51 D.P.R. 387, 390 (1937), añadimos que "en bien de la justicia y de la rapidez de los procedimientos debe seguirse adoptando la [referida] regla." Luego, en *Rivera* v. *Cardona*, 56 D.P.R. 819, 823 (1940), con referencia al Art. 1081 del Código Civil dijimos que:

"La interpretación estricta de este precepto exige que en los casos a que el mismo se refiere, se recurra previamente al tribunal para que fije el plazo y una vez fijado, y sólo cuando vencido éste no se haya cumplido la obligación, podrá establecerse la acción para exigir su cumplimiento. Podría alegarse que mientras no venza el plazo previamente fijado por el tribunal, la causa de acción no existe y por consiguiente sería prematura la acción establecida con anterioridad a la fijación del plazo. Sin embargo, este tribunal sin disidencia alguna, en el caso de *Nicorelli* v. *Ernesto López & Co.*, 26 D.P.R. 55, en bien de la justicia y de la rapidez de los procedimientos desechó la interpretación estricta a que venimos refiriéndonos e interpretó el referido artículo resolviendo que la fijación del plazo a que se refiere el artículo 1081, supra, puede hacerse dentro del pleito en cobro de la obligación." ([3])

---

([3]) Nótese que de prevalecer una interpretación literalista del Art. 1081 del Código Civil, la causa de acción en este caso no procedería pues

El Art. 1081 es aplicable a obligaciones en general y la cuestión de lo que es tiempo razonable es más o menos de hecho para la corte. Ésta "está obligada a resolver como cuestión de hecho o como cuestión mixta de derecho y de hecho si bajo las circunstancias hubo una demora irrazonable." *G. H. Hammond Co.* v. *Diego Agüeros & Co.*, 30 D.P.R. 610, 613, 614 (1922). Véanse, además, *Prieto* v. *Hull Dobbs Co.*, 88 D.P.R. 420, 424 (1963); *Sánchez* v. *De Choudens*, 76 D.P.R. 1, 11, (1954); Manresa, *Comentarios al Código Civil Español*, 6ta. ed., vol. 8, págs. 452, 453, 454; Scaevola, *Código Civil*, 2da. ed., vol. XIX, pág. 799; Puig Peña, *op. cit.*, pág. 538.

No hay duda, pues, que tratándose de una opción sin plazo fijo para ejercitarla, correspondía al tribunal de instancia fijar dicho plazo. Podía hacerlo en el pleito iniciado para el cumplimiento específico de dicha obligación. Bajo las circunstancias del caso convenimos con dicho tribunal que el término de tres años era un plazo razonable para ejercitar el referido derecho de opción y que al dejar el recurrente de hacerla efectiva dentro de dicho plazo, la opción caducó, "carecía ya de eficacia legal" como concluyó dicho tribunal.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 7 de octubre de 1967.*

El Señor Juez Presidente y el Juez Asociado Señor Dávila no intervinieron. El Juez Asociado Señor Blanco Lugo concurre en el resultado.

---

sería prematura por haberla iniciado el recurrente antes de haber solicitado y obtenido la fijación del plazo por el tribunal de instancia.